## Buchanan *versus* Duncan *et al.*

*Tenancy by the Curtesy, Seisin necessary to create.— Construction of Will.—Life Estate in Land not created by Bequest of Rights and Privileges in it.*

1. In Pennsylvania a surviving husband is entitled to curtesy of land of his deceased wife, though she had no actual possession, but only a potential seisin during her life. If she had possession by a tenant for years, or only the right to present possession, it is sufficient.

2. A testator by will provided that his widow, during her life, should live upon the homestead farm, upon which she was to have certain rights and privileges; as, a portion of the dwelling-house, one-half of the garden, one-half of the share of the grain coming from the tenant, pasture in summer and hay in winter for her cow and horses, firewood, &c. He then made a distribution of his whole estate, and after making a few legacies and bequests, gave

[Buchanan *v.* Duncan.]

to each of his two daughters, who were both married, the "one-half part of his real and personal estate for the use and benefit of her legal heirs;" afterwards, and before the death of the widow, one of the daughters, the wife of B., died, and her husband claimed his curtesy as to one-half of the farm. In an action of ejectment, brought by him, it was *held*, that the widow had not an estate for life in the homestead farm, but only certain rights and privileges in it.

That, subject to the provisions in favour of the widow, it descended to the two daughters at the death of the testator, the wife of B. taking an estate in fee simple in one undivided moiety of the farm, in which her husband was entitled to an estate by curtesy at her death.

ERROR to the Common Pleas of *Blair county*.

This was an action of ejectment brought in the Common Pleas to July Term 1854, by George Buchanan, against Daniel Duncan and Samuel Duncan, for the undivided half of a tract of land in Tyrone township, Blair county, in which the following case was stated for the opinion of the court, in the nature of a special verdict:—

The premises described in the writ of ejectment, was the mansion tract of Samuel Kyle, late of Sinking Valley, Blair county, deceased, and was the only tract of cultivated land owned by him in Sinking Valley, and is the land described in the will hereinafter mentioned as the "Sinking Valley Farm."

The said Samuel Kyle died in the year 1827, leaving a widow, Jennet Kyle, and two daughters, viz., Nancy, then intermarried with George Buchanan, the plaintiff in this case, and Margaret, intermarried with Samuel Duncan (one of the defendants).

The said Samuel Kyle left a last will and testament, dated the 16th of February, A. D. 1827, which was admitted to probate on the 23d of August, A. D. 1827, and which is in the following words, viz.:—

"In the name of God, Amen. I, Samuel Kyle, of Tyrone township, Huntingdon county, and Commonwealth of Pennsylvania, being somewhat indisposed in body, but of sound and perfect mind and memory, and knowing the uncertainty of life, and that it is appointed for all living once to die, and in order to premise peace and unanimity amongst those concerned, and for the more easy and ready settling and disposing of that portion of the good things which it hath pleased the Lord to bestow upon me in this life: (*Imprimis*), I do truly resign my immortal and never-dying soul to Him from whom I received it, who is God of gods and Lord of lords, and my mortal body to the earth from whence it came, to be interred in a Christian-like manner, in full belief that it shall rise in that great and general day when all shall come forth that God may judge them.

"Item first. I order that all my just and lawful debts be first punctually paid, together with the costs and expenses accruing from my funeral, out of my personal estate.

[Buchanan *v.* Duncan.]

"Item second. I leave and bequeath to my well beloved wife, Jennet Kyle, the use and benefit of the old end of the dwelling-house, both above and below, during her natural life, the one-half of the garden, and part of the spring-house for her milk; and I also bequeath to my said wife two of her choice of my beds, bedsteads, and clothes filling for the same; and I bequeath to her the half of what grain that would come to me yearly from the tenant, of wheat, rye, corn, buckwheat, and oats, and ten bushels of potatoes yearly, and also fifteen dollars in cash yearly during her natural life; and she is to have the bay horse, known by the name of Charley, and the bald mare's colt, and her choice of two of the milk cows, and her choice of six sheep out of the flock; and my said wife is to have a sufficiency of pasture in the summer for horses, cows, and sheep, and also a sufficiency of hay of the farm yearly for them in the winter, and stable for horses and cows in the winter; and my said wife is to have half a bushel of flaxseed sowed for her yearly on the farm, and to be put in for her in good ground in good order; and she is to have use of the clock and carpets in the house during her life; and I leave her fifty dollars of the Huntingdon bank stock, with interest on the same until paid; and she is also to have the large copper cottle, and tubs, and kitchen furniture, as much as she thinks necessary for her to keep during her life; and her saddle; and to a sufficient quantity of firewood cut and hauled to her yearly during her life, and to Susanna Campbell during the time of her indenture; and my said wife is to have six of her choice of the chairs in the house; and she is to have also the woollen and linen yarn and cloth, and the wool of     flock of the sheep this spring, if not shorent at my decease.

"Third. I leave and bequeath to Nancy Haggerty one white cow, known by the name of her cow, and I leave also to her six sheep, if there be so many of her mark alive.

"Fourth. I leave and bequeath to Samuel Edie Kyle Duncan the sum of two hundred dollars, lawful money of the United States, to be paid to his guardian for the use of the said Samuel Edie Kyle Duncan, four years after my decease, and I leave to the said Samuel Edie Kyle Duncan my watch. I leave and bequeath to my dutiful daughter, Nancy Kyle, *alias* Nancy Buchanan, for the use and benefit of her legal heirs, the one-half of the remaining part of my real and personal property after the aforesaid bequests and legacies are fully satisfied and paid. I leave my said daughter Nancy the one-half of the remainder of the Huntingdon Bank stock belonging to me after what is already bequeathed; also the half of my part of the Indiana and Cambria Turnpike stock, and the one-half of a tract of land in Indiana county, to her and to her legal heirs for ever, and also the half of what money is due me by James Richards, of Armstrong

[Buchanan v. Duncan.]

county, or otherwise, if not paid by said Richards, the half of said tract purchased by him from me; and I also bequeath to my said daughter, Nancy Buchanan, the one-half of my land in Sinking Valley, after the decease of my beloved wife, to her and her heirs for ever.

"Sixth. I leave and bequeath to my dutiful daughter Margaret Kyle, *alias* Margaret Duncan, for the use and benefit of her legal heirs, the one-half of my estate real and personal, in equal proportion with my daughter Nancy, after the forementioned legacies are fully paid or satisfied, that is, the half of the remainder of the Huntingdon Bank stock, after the first bequest out of it is fully paid, the half of my part of the Indiana and Cambria Turnpike stock, and the half a tract of land in Indiana county, to her and her legal heirs forever, and also the half of what money is due me by James Richards, for a tract of land bought by said Richards from me, lying in Armstrong county, and in case said James Richards are not able to pay for said tract of land, I leave and bequeath the half of said tract to my said daughter Margaret, to her and her heirs forever; and I bequeath the half of my estate in Sinking Valley, after the decease of my beloved wife Jennet Kyle, to Margaret Duncan and her heirs forever. I do hereby bequeath and leave to wife and executors my library of books, to be amicably, those of a religious nature them, those on arithmetic, mathematics, or the law, to be divided between George Buchanan and Samuel Duncan. And I do hereby constitute, make, and ordain Jennet Kyle executrix, and George Buchanan and Samuel Duncan my sole executors of this my last will and testament, and do authorize these my executors to make sale of any of my back lands or any part of said back lands sold by me, for my said executors to make a deed or deeds of conveyance for the same, as available in law or equity as if I myself were personally present, to the said purchaser or purchasers; and I do hereby utterly disallow, revoke, disannul all and every other and former will, testament, wills, legacies, bequests and executors by me or any before named, willed and bequeathed, ratifying and confirming this and no other to be last will and testament. In witness whereof I have hereunto set my hand and seal this sixteenth day of February, in the year of our Lord one thousand eight hundred and twenty-seven (1827).

"SAMUEL KYLE. [L. S.]

"Signed, sealed, pronounced, and declared in presence of us.

"WILLIAM McCORMICK,
"EDIE STEWART."

George Buchanan, the plaintiff, and Nancy his wife, had issue one child, a daughter, who died in 1833.

Nancy Buchanan died in 1843.

Jennet Kyle, the widow of testator, died in 1851.

Margaret Duncan, wife of Samuel Duncan, died in 1829, leaving a husband, one of the defendants, and issue, Samuel E. K. Duncan, one of the defendants, Joseph Duncan, Matilda Duncan, Margaret Duncan.

Samuel Duncan and George Buchanan, who were the acting executors of Samuel Kyle, by the consent of Jennet Kyle, the widow, leased the premises from the death of Samuel Kyle till the death of Jennet Kyle, to William McCormick.

If the court should be of the opinion that George Buchanan is entitled to the possession of the undivided half of the tract of land described in the writ, then judgment to be entered for the plaintiff, that he do have and recover the same with costs of suit. Or if the court should be of the opinion that the said George Buchanan is entitled to the possession of any portion of said tract of land, less than the undivided half thereof, then judgment to be entered that the plaintiff do have and recover such portion.

If the court should be of the opinion that the said George Buchanan is not entitled to the possession of any part of said tract of land, then judgment to be entered for defendant.

The court below entered judgment for defendants; whereupon the plaintiff sued out this writ, assigning the giving of said judgment for error.

*S. S. Blair*, for plaintiff, argued that under the will of Samuel Kyle, his daughter Nancy, the wife of the plaintiff, was so seised of the premises claimed in the writ as to entitle her surviving husband to a tenancy therein by the curtesy, she having died, without issue living, in 1843; and that the isolated clause by which he gives "to his daughter, Nancy Buchanan, one-half of his land in Sinking Valley, after the decease of his wife, to her and her heirs for ever," was not in itself sufficient to support the position of defendants; that the widow of testator had a life estate in the whole tract, which did not terminate until Mrs. Buchanan's death; and that Mrs. Buchanan's interest therein was only a remainder over after the death of Mrs. Kyle.

That this clause by itself was an executory devise, to take effect on the widow's death, without any disposition of the freehold in the interim; that therefore the law, on the death of the widow, would cast it on the heirs, and thus give Mrs. Buchanan an undivided moiety thereof, and make her seisin complete: 4 Kent 284. But that the other parts of the will show that testator did not intend to give his widow the *freehold* for life only, because by giving her a portion of the dwelling-house, stable, and garden, with a certain quantity of hay, pasture, grain, potatoes, and fruit, he evidently contemplated that some other person

should have possession of the land. There was, therefore, under the will, a potential seisin or right of seisin in Mrs. Buchanan, which was sufficient to raise an estate by the curtesy: Stoolfoos v. Jenkins, 8 S. & R. 175; Chew v. Commissioners of Southwark, 5 Rawle 160.

*Samuel Calvin*, for defendants.—The words "I also bequeath to my said daughter, Nancy Buchanan, the one-half of my lands in Sinking Valley, after the decease of my beloved wife, to her and her heirs for ever," gave to her a vested remainder, and therefore the plaintiff cannot be tenant by the curtesy: Hitner v. Ege, 11 Harris 305. The law favours vested estates; and no remainder will be construed to be contingent which may, consistently with the intention, be deemed vested: 4 Kent 201–206. "A limitation is not to be deemed an executory devise, if it may, by any practicable construction, be sustained as a contingent remainder:" Stehman *et al.* v. Stehman, 1 Watts 466. But, whether an executory devise or not, was Nancy Buchanan *seised?* "To entitle the husband to curtesy, the wife must have had such a seisin as will enable her issue to inherit: 4 Kent 29–31; Pritt v. Ritchey, 5 Casey 71. The cases in 8 S. & R. and 5 Rawle, cited by plaintiff's counsel, show that there must be either an actual or "potential seisin, or right of seisin;" that there must be an actual or constructive possession, or present right of possession during coverture, to entitle the husband to curtesy. The question is not whether there was an actual or potential seisin in Jennet Kyle, widow of the testator, but whether there was such actual or potential seisin, possession, or the right of possession in Nancy Buchanan. Had she "a right to demand and receive the rent," or otherwise to "demand and receive the immediate possession?" Certainly, no such possession, or right of possession, or such receipt of rent, or right to receive it, or to recover the possession, is shown to have been in her.

Had not Jennet Kyle a life estate in at least a portion of the land, and had she not a right to receive at least a portion of the rents and profits during her life? Is the income given to her in the will no disposition of the freehold? The widow gets the actual possession of a part of the premises, is to receive one-half of the rents, and to enjoy divers other rights and privileges in the land. And how is the will to be carried into effect? How is she to enjoy these rights and privileges? The testator intended that his widow should have a life estate, or that his executors, his widow being one of them, should have possession or control of the farm during her life, and either rent it or so conduct and manage it, that the widow should enjoy all the rights and privileges granted to her.

The opinion of the court was delivered, July 24th 1861, by

STRONG, J.—In this state a surviving husband is entitled to curtesy of land of his deceased wife of which he had only a potential seisin during her life. Actual possession by the wife or by the husband in her right is not necessary. If she had possession by a tenant for years, or if she had a right to present possession, it is sufficient. The effect is equivalent to that of actual· seisin: Stoolfoos *v.* Jenkins, 8 S. & R. 175; Chew *v.* Southwark, 5 Rawle 160. If, therefore, the wife of the plaintiff was, during her lifetime, either actually or potentially seised of the Sinking Valley Farm (the property in dispute), his curtesy became complete at her death, and he is entitled to recover. The whole question in this case then is, what estate in that farm did Mrs. Buchanan take either by descent or under the will of her father ? .From the will, as well as the case stated, it appears that he left a widow and two daughters—Mrs. Buchanan and Mrs. Duncan. He first made provision for his widow. To her he left during her natural life "the use and benefit of·the old end of the dwelling-house" (on the farm), "the one-half of the garden and part of the spring-house for her milk," "half of the grain that would come to him from the tenant," "a sufficiency of pasture during the summer" for her cow and horses, "a sufficiency of hay for them" in the winter, "the right to have half a bushel of flax-seed sowed for her yearly on the farm, and to be put in for her in good ground in good order," and a right to have a sufficient quantity of firewood cut and hauled to her yearly during her life. He also gave to her an annuity, and various articles of personal property.

It seems quite clear that neither any one of these provisions, nor all combined, amounted to a devise of the farm to the widow during her life. The benefits secured to her were, at most, certain rights and privileges upon the farm—not the farm itself nor all its usufruct. As against the owner she could enforce the provisions made in her behalf, but those provisions looked to an owner other than herself to whom she could resort.

Now had the will stopped here, the Valley Spring Farm would have descended, on the death of the testator, to Mrs. Buchanan and to Mrs. Duncan, encumbered with the charge in favour of the widow, and would have been clearly subject to the curtesy of a husband. But the testator proceeded to make a disposition of all his property. He gave two specific legacies, and also a small pecuniary one to a grandson, and then gave to Mrs. Buchanan, for the use and benefit of her legal heirs, the one-half of the remaining part of his real and personal property after the aforesaid legacies and bequests should be fully satisfied and paid, and he made a similar disposition of the other half in favour of Mrs. Duncan. It is manifest that under this clause of the will the two daughters took a fee simple in all the real estate of which

[Buchanan v. Duncan.]

the testator died seised, and which he had not previously devised. If, then, as we think, the farm was not devised to the widow for life, the right to its enjoyment passed to the daughters immediately, subject to the charge, the privileges, and easements created for the widow. Nor is this construction inconsistent with the directions of the will which follow this devising clause. The testator, having made this comprehensive disposition, proceeded to specify the more important items of his property given, both real and personal. With this view he left to Mrs. Buchanan one-half of certain stocks, one-half of a tract of land in Indiana county, one-half of a sum of money due to him for a tract of land sold, or the tract itself, and added: " and I also bequeath to my said daughter Nancy Buchanan the one-half of my land in Sinking Valley, after the decease of my beloved wife, to her and to her heirs for ever." If the rights of Mrs. Buchanan were such only as this last clause standing alone would have conferred upon her, the defendants in error would be right, for then she would have had no title to the enjoyment of the farm until after the death of the widow, and the widow survived her. But such is not the case. This provision is not to be construed without reference to the other parts of the will. Full effect is to be given, if possible, to every provision; and if this is taken by itself the previous gift of all the testator's real and personal property is unmeaning. Placing ourselves in the testator's situation, endeavouring to catch his intention as expressed by his entire will, he seems to have said: I have made provision for my wife, and for all except my two children; I now leave to them all the remainder of my property; of a part, which I specify, there will be no hindrance to their full and immediate enjoyment. Out of the Sinking Valley Farm, however, they must render certain duties to my wife during her life. Of that, therefore, they can only have partial enjoyment while she lives, but after her death their enjoyment shall be unclogged. Such being the meaning of the will, there was a seisin of the farm in Mrs. Buchanan, as to one-half, immediately on the death of her father, even during the life of the widow, and, on Mrs. Buchanan's death, the plaintiff's right to curtesy was complete. It follows that he is entitled to recover.

> The judgment is reversed, and judgment is entered on the case stated for the plaintiff and against the defendants, for an undivided moiety of the tract of land described in the writ.