## Spangler and Union Canal Company's Appeal.

1. The use of the canal of an incorporated company cannot be rendered contingent by injunctions to restrain it on allegations of injuries to private parties by its construction or use.

2. Where there is a provision in an act incorporating a canal company, &c., for injuries for taking private property, the mode designated must be pursued.

3. The Constitution does not require consequential injuries to be prepaid.

4. A bill was filed to restrain defendants from diverting water from a mill; by the answer and evidence it was shown that the defendants were acting by order of a canal company. The court permitted the plaintiff to amend the bill by making the company a party, allowed a replication to be filed *nunc pro tunc*, and made a decree against the company without service on them. *Held*, to be erroneous.

March 7th 1870. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. READ, J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Berks county*: In Equity: No. 220, to January Term 1870.

This bill was filed, August 27th 1868, by Wayne J. Stump and Samuel Fisher against William Spangler, John Woomer and Samuel Hoover.

It set out:

2. That the plaintiffs owned a tract of land on which there was a mill, and that its sole power was furnished by the

waters of Tulpehocken creek, and it was indispensable to the business of the mill that they should have the use of the water undiminished, as they had theretofore had it.

3. That across the creek, on the land of John S. Reed, about 800 yards above the plaintiffs' mill, a dam had been for a number of years and was then erected, the water from which furnished the motive power for the plaintiffs' mill, from which dam a race conducted water from the creek into the Union Canal.

4, 5 and 6. That the defendants, about August 1st 1868, enlarged and deepened the race, and raised the dam four inches, causing an additional flow of water from the dam into the canal; that this water was not returned into the creek above the mill, and they had lost the use of it; that therefore they could not run the mill as theretofore, and their business at the mill was irreparably injured.

7. That upon finding the water thus diminished, on the 2d of August, with the consent of Reed, they reduced the dam to its former height and the water flowed as theretofore.

8. On the 6th of August the defendants again raised the dam, producing the same effect in the flow of water and the same injury to the mill as before, and that the defendants declare their intention to maintain the dam at the same height for all time to come.

The prayers were:—

2. That the defendants be enjoined to remove the obstructions, so that the plaintiffs may have the full use of the stream as heretofore; and also from causing any obstruction at any time hereafter in the flow of the creek, so as to interfere with the plaintiffs' right to it.

On the same day the defendants filed an answer which set out:

1 and 2. They were the workmen and servants of the Union Canal Company, a corporation established by Act of April 2d 1811, which had constructed a canal connecting the waters of the Susquehanna at Middletown with the Schuylkill at Reading, and that the canal has been in operation more than thirty years, transporting produce and goods from Middletown to Reading; that by the above act they were authorized to adopt any mode " or any improvement hitherto adopted, or such as may hereafter anywhere be invented in the system of internal navigation, and apply the same from time to time, and for such purposes to have power to purchase lands, mills, mill-ponds, waters, watercourses, or other real hereditaments as shall in their opinion be necessary, and in default of purchasing, the Court of Quarter Sessions shall award a venire at the instance of either party, directed to the sheriff of any adjoining county, who shall summon a jury of disinterested men in order to ascertain and report to the said court the damages sustained by the owner or owners thereof, by reason of the said canal or works; which report being confirmed by the

court, judgment shall be entered thereon, and if not paid, execution may be awarded for the money and reasonable costs," &c.

3. They averred that by virtue of this law, the Union Canal Company is authorized and empowered to take and make use of the waters of said Tulpehocken creek for the uses and purposes of their said canal.

4. They denied knowledge as to whether the plaintiffs are the owners of the tract of land and grist-mill, but admitted that there is a tract of land so situated on which there is a grist-mill; said premises having been formerly owned and occupied by a certain George Keiser.

5. They averred that the power for running the mill is furnished by the Tulpehocken creek, at such times and seasons as the water of said creek is not all needed for the maintaining and keeping up of the said canal by means of a dam erected across the said Tulpehocken creek, and a race leading therefrom to the canal, constructed by the canal company, about the year 1827, and rebuilt by them in the summer of 1850 or 1851; that the surplus water of said dam not needed for canal purposes, which is permitted to flow over said dam, furnishes the motive power for said mill.

6. They denied that the dam across the said Tulpehocken creek is on the land of Reed, but is on lands of the canal company, duly obtained by inquisition from Reed, for which they paid a valuable consideration.

7. They denied that the dam furnished the water-power of the mill, and averred that it was not erected for that purpose; but that it was erected by the canal company, of whose works it forms an integral part, for the purpose of supplying that portion of their canal adjacent thereto with water; and that without it said canal could not be operated or its navigation maintained.

8. They denied that they enlarged or deepened the race by which the water of said dam is conveyed into the canal.

9. They admitted that in July 1868, by order of the canal company, the dam having settled and sunk eight or ten inches, they raised the breast by timbers fastened thereon to the height of four inches only, and not to the height originally erected in the year 1850 or 1851, and did not thus increase the flow into the canal equal to the flow after the erection of the said dam in 1850 or 1851.

10. They averred that the water of said Tulpehocken creek being thus retained for supplying said Union Canal with water, the water could not be returned into the creek for the use of the mill without destroying the navigation of the canal for a great distance and rendering useless the entire canal.

11. They averred that the mill at no time since the rebuilding

of the dam, &c., received any water of said creek or dam but such as was not necessary for the supply of said canal, &c.

14. They averred that the tract of land and grist-mill, now claimed by the complainants, was formerly owned by George Keiser, that said canal company rebuilt said dam and race in 1850 or 1851, at which time Keiser was seised in fee of said tract of land, grist-mill and water-right, &c., and that Keiser did, on the 13th day of September 1851, petition the Court of Quarter Sessions of the county of Berks, asserting therein that the canal company had turned all the water of said Tulpehocken creek and taken the same into their said canal, &c.; that the court awarded a venire to the sheriff of Lancaster county, who summoned a jury, and said jury on the 28th day of October 1851, assessed and valued the damages done to Keiser at $2100; which sum was paid to Keiser by the canal company.

15. They averred that during dry seasons all the water of Tulpehocken creek at said dam is needed and absolutely required for the purpose of supplying said canal with water, &c.

16. They averred that at all stages of water it is imperatively necessary that said timber should remain upon the breast of said dam, and without it, that part of the canal company's navigation could not be maintained.

On the 24th of April 1869, the plaintiffs petitioned the court, representing that after an examiner had been appointed, without formal replication, and before the taking of testimony had been finally closed, it occurred to them, that owing to the allegations in the answer, that the defendants were the servants of the canal company, it became necessary to amend the bill by averring that the canal company were, at the time of the grievances committed, an insolvent corporation; that no compensation had been made or security given, as required by the Constitution, for the damage done by the acts charged in the bill, and they were not bound to submit to the uncertain remedy of the Act of 1811, and prayed that they might amend the bill according to the petition.

The court allowed the plaintiffs to amend the bill within twenty days, and on the 26th of April they filed an amended bill. On the 19th of May the defendants filed an answer to the amended bill, denying knowledge of the insolvency of the canal company, and averring that the plaintiffs had an adequate remedy at law under the provisions of the Act of 1811. On the 7th of September, the case, by agreement of counsel, was set down for argument. It was argued September 17th; on the 18th the plaintiffs applied to amend their bill again.

The application set forth that the answer and testimony showed that the acts of the defendants were done as the servants of the Union Canal Company, and "in order to

cure a formal defect and reach the merits of the said suit, the corporation should be made a defendant," &c.

The counsel for the defendants waived a formal proceeding to bring in the canal company, in answer to the petition. On the 1st of November the court fixed the 20th of the same month for hearing the application for amendment. On that day the argument for amendment was heard, and the defendants moved to dismiss the bill for want of jurisdiction. On the 4th of December, the court allowed the amendment, directed a replication to be filed, *nunc pro tunc*, and upon an opinion by Van Reed, J., made the following decree:—

"Let a decree be entered enjoining the Union Canal Company of Pennsylvania, to remove the timber to the extent of three and a quarter inches from the breast of their dam, and from hereafter placing any obstruction to the flow of the water over the breast of said dam, until they shall first pay or give security for the damages likely to result from such obstruction. And it is ordered that the defendants pay the costs."

The defendants, including the Union Canal Company, appealed to the Supreme Court.

They assigned for error:—

1. Allowing the amendment making the Union Canal Company co-defendants.

2. Making a decree enjoining the Union Canal Company.

3. Not dismissing the bill as to Spangler, Woomer and Hoover, with costs.

4. Granting an injunction.

*W. M. Derr* and *F. L. Smith*, for appellants.—As to the amendment: Proper notice was not given to the canal company: Act of May 4th 1864, § 2, Pamph. L. 775, Purd. 1334, pl. 2; Rules in Equity 10, 54, 71; Jackson *v.* Wilson, 7 W. & S. 250; Act of April 17th 1856, Pamph. L. 388, Purd. 199, pl. 32. An injunction cannot be granted until defendants have been served: Blair *v.* Boggs Township, 7 Casey 274. Testimony taken before service could not be used against the company.

The plaintiffs did not establish a right to the water; their title not having been admitted by the pleadings: Adams's Eq. 362, 363; Cox *v.* Gillingham, Jacobs's Ch. R. 339. The company could not be restrained in the matter complained of. By Act of September 29th 1791, the Union Canal Company were authorized to use Tulpehocken creek, and a mode was provided for ascertaining damages; by Act of April 2d 1811, other companies were incorporated with the Union Canal Company and they were authorized to take the waters of Tulpehocken creek, the damages to be assessed, if necessary, by a jury from an adjoining county. A charter to execute a public work is a contract: Monongahela Nav-

igation Co. *v.* Coons, 6 W. & S. 114; Same *v.* Same, 6 Barr 382; McKinney *v.* Monongahela Navigation Co., 2 Id. 66. Consequential damages are not within the constitutional provision: Phila. & Trenton Railroad Co., 6 Wharton 25; Mifflin *v.* Railroad Co., 4 Harris 192; Henry *v.* Pittsburg & Allegheny Bridge Co., 8 W. & S. 85; Union Canal Co. *v.* O'Brien, 4 Rawle 358.

The plaintiffs having a statutory remedy, must pursue it, and equity can give them no relief: Knorr *v.* The Germantown and Norristown Railroad Co., 5 Whart. 256; Commonwealth *ex rel.* Attorney-General *v.* Garrigues, 4 Casey 12; Spooner *v.* McConnell, 1 McLean 338; Cleaveland, Painsville and Ashtabula Railroad Co. *v.* Franklin Canal Co., 1 Pittsburg L. J. 24, Dec. 1853; Bonaparte *v.* Camden and Amboy Railroad Co., 1 Baldw. 205; Hamilton County *v.* Cincinnati and Worcester Turnpike Co., Wright's Ohio Rep. 603; Barring *v.* Erdman, 14 Hazard's Pa. Reg. 129; Moor *v.* Railroad, 3 Philada. R. 210.

Injunctions on equitable grounds are grantable only where they are incidental to the relief prayed for, and that relief is within some other head of equitable jurisdiction, as fraud, accident, mistake or account: Riley *v.* Ellmaker, 6 Whart. 545; Hegner *v.* Heyberger, 7 W. & S. 106, 107; Commonwealth *v.* Rush, 2 Harris 193. An injunction will not lie to restrain the operations of an incorporated bank, because it continues after it is insolvent: Attorney-General *v.* Bank of Niagara, Hopk. Chan. R. 354; Heilman *v.* Union Can. Co., 1 Wright 104.

*A. E. Green* and *J. S. Richards.*—By the amended constitution the compensation or security must be given beforehand. The legislature can modify a remedy: 2 Story on the Constitution, § 1385; Sedw. on Stat. and Const. Law 643; Stoddard *v.* Smith, 5 Binn. 355; Deichman's Appeal, 2 Whart. 395; Chadwick *v.* Moore, 8 W. & S. 49; Commonwealth *v.* Easton Bank, 10 Barr 442.

The company cannot demand an assessment of damages until they are in a position to take the water lawfully; prevention is now asked: Com. *v.* Pittsburg and Con. Railroad Co., 12 Harris 159; Bonaparte *v.* Camd. and Amboy Railroad Co., 1 Baldw. R. 205; Jordan *v.* Railroad Co., 3 Whart. 312, 313. The right to the use of water is a corporeal hereditament: 2 Black. Com. 14; Id. 18, 19, and 403, note, and is embraced in the constitutional provision: Bell *v.* Ohio and Penna. Railroad Co., 1 Grant 105.

An injunction will lie whenever the damage is irreparable, in the legal sense of that term, which means wrongs of a repeated and continuing character, or which occasion damages estimable only by conjecture and not by any accurate standard: 2 Story's Eq. Jur., §§ 925, 926; Com. *v.* Pittsb. and Con. Railroad Co., 12 Harris 159; 2 Story's Eq. Jun. 927; Hilliard on Inj. 446;

[Spangler's Appeal.]

Unangst's Appeal, 5 P. F. Smith 128; Jordan v. Philada. and W. Railroad Co., 3 Whart. 512; Com. v. Rush, 2 Harris 195, 196; Heilman v. Union Canal, *supra.*

The opinion of the court was delivered, May 5th 1870, by

THOMPSON, C. J.—The main question in this appeal is, whether, conceding the complainant's right to compensation on account of a diminution of the flow of water from Tulpehocken creek over the canal company's dam, on account of an increase of its height by the company to supply their canal, the latter is subject to be enjoined from the use of the water of the creek for such a pur-·pose until the plaintiffs are compensated therefor. If so, the consequence would be inevitable, that the public' right to use and pass over the company's canal, a public highway, would be subordinate to private interests of the mill-owner, and to others similarly situated. This will not do.

The canal was built to accommodate the public as a public highway, and a remedy is provided in its acts of incorporation to compensate private parties for injuries received in its construction and use. It would never do to render its use contingent; to allow parties by writs of injunction to deprive it of the necessary supply of water when most needed. To do so would destroy the highway altogether by rendering its navigation uncertain and contingent.

The dam upon which the additional height complained of was added, was built by the company on its own property, or property obtained by the right of eminent domain granted to it by the Commonwealth, and is a half a mile above the plaintiff's mill. No contract is alleged as existing between the company and complainants, by which the former engaged to permit any water to flow over its dam to their mill, nor is there any law requiring it to do so. How, then, can the company be restrained from raising their dam for the temporary supply of their works when it needs it? By the·original act of incorporation of 29th September 1791, the company was authorized to take all the water of the Tulpehocken for the use of its canal; by the Consolidation Act of 1811, it was provided that the company might use the waters of any creek or stream on the route of the intended canal. There is a provision in the latter act, as there was in the former, for compensating parties injured by taking creeks, tenements, mills, mill-ponds, water and watercourses by the company for the construction and use of its canal. We have innumerable decisions to the effect that in all such cases the remedy must be pursued. So, indeed, have we an Act of Assembly to that effect, the Act of 1806. If, therefore, the complainants here sustained or are sustaining injury required to be compensated by the act of incorporation or its supplements, they must resort to that. They cannot stop the works of the company to coerce payment. The notion

that consequential injuries are required by the Constitution to be prepaid is a mistake. · The Constitution only applies to *taking* private property; that must be prepaid or secured to be paid before it can be taken. Not so consequential damages. If the act of incorporation requires such damages to be prepaid the law may be enforced, but if it does not, there is no authority to require their payment at all, or at any time other than that expressed when required to be compensated.

If these mill-owners have a remedy under the statute they must pursue it; if they have none there, they are not entitled to ·anything: Monongahela Nav. Co. *v.* Coons, 6 W. & S. 114; McKenney *v.* Same, 4 Harris 192; Henry *v.* Pittsburg and Allegheny Bridge Co., 4 W. & S. 85; Watson *v.* Pittsburg and Con. Railroad Co., 1 Wright 479. Numerous other authorities might be cited to the same effect.

It rarely happens, even when consequential damages are required to be paid, that they are applied for until the works of the company liable for them have developed their extent. Then the party injured applies. But it would be an intolerable evil if such a party were authorized to stop the works by injunction operating on the supply of water for instance, when it is a canal, until the damages are paid. It cannot be done, and no book or case shows that it can.

It is enough, however, to say that this company is authorized to take the waters of Tulpehocken creek for its canal, and it is not an act contrary to law or equity either that they do, and without this it cannot be enjoined, nor can its servants and agents engaged in aiding it to do what the law allows the company to do. Besides, there is either an adequate remedy in the act for compensating the injury, or there is no allowable remedy of any kind.

The amendment allowed on motion of complainants, to add the company as defendants, and on the same day permitting a replication, *nunc pro tunc*, to be filed, and a decree to be entered against the company, was without authority in practice, and it seems by the record to have been equally unsupported by any agreement of the company, or any one authorized to consent to it. That Mr. Smith accepted notice of the proposed amendment, and argued against it, did not waive notice to the company, and service of the bill and amendment, as required by Rule 54 of equity practice, and we have no evidence of an express waiver by him, and it is expressly denied by him and the company both. This proceeding was too fast by half. It has no significance in this case, but it is noticed to prevent the recurrence of such an error on any similar occasion.

> Decree of the court below against the company is reversed and appeal dismissed, and the bill as against the individual defendants is dismissed at the costs of the complainants.