## APPEAL OF CATHERINE BROTZMAN.

## [CATHERINE BROTZMAN v. RACHEL RIEHL, ET AL.]

APPEAL FROM THE COURT OF COMMON PLEAS OF NORTH-
AMPTON COUNTY, IN EQUITY.

Argued March 5, 1888—Decided April 16, 1888.

The will of a testator gave to his widow in lieu of dower, the homestead
dwelling with necessary privileges in the outhouses, fuel, and one
third of the products of the premises devised to his three sons, subject,
however, to a benefit for his daughter, so long as she remained unmar-
ried, of the use of a room in the dwelling, like privileges in the out-
buildings and the right to be furnished by his widow with as much
provision as she might reasonably want without cost.

It was further provided that in case these provisions should be insufficient
in the opinion of the executors for the comfortable support and main-
tenance of the widow and daughter, the sum of $100 should be paid
annually to them or the survivor out of the proceeds of the rent for the
ore-bed.

After the widow's death, the daughter filed a bill in equity against the
devisees, alleging a deprivation of her privileges in the homestead
and the insufficiency of provisions made for her support, praying for a
decree of restitution and for the payment of the annuity and the ar-
rears thereof, with interest: Held,

1. That the provisions in favor of the daughter were charged upon the

real estate of the testator, and that, a complete remedy for. enforcement being provided by § 59, act of February 24, 1834, P. L. 84, the jurisdiction of the Orphans' Court was exclusive of both the equity and common law jurisdiction of the Court of Common Pleas.

2. That, this court being of opinion that the case upon its merits was with the plaintiff, a decree dismissing her bill for want of jurisdiction should be affirmed without prejudice to her right to proceed under the said act of 1834 in the Orphans' Court.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 175 July Term 1887, Sup. Ct.; court below, No. 1 February Term 1881, C. P. in equity.

On January 24, 1881, a bill in equity was filed by Catherine Brotzman, as plaintiff, against Rachel Riehl, the wife of Thomas Riehl and surviving executrix of the will of Joseph Brotzman, deceased, Hannah Brotzman, widow, and U. V. Brotzman, Ephraim Brotzman, and others, heirs of John P. Brotzman, son of Joseph Brotzman, deceased, and the Glendon Iron Co., assignee of Charles Jackson, Jr., lessee.

The bill averred in substance:. That the plaintiff was a daughter of Joseph Brotzman, who died testate on September 17, 1852, by whose will provisions were made for the plaintiff as in the paragraph therefrom hereinafter quoted.

That the plaintiff had remained single and unmarried, and her mother, the testator's widow, died on August 18, 1875, since which time she had been deprived of the necessary privileges in the kitchen, cellar, yard, garden and outhouses and the provision of which she was reasonably in want, as well as of the annual payment of $100 out of the proceeds of the rent of the ore-bed, though said ore-bed had been continuously rented during the whole time since said date for a rental largely in excess of said sum.

That Rachel Riehl, executrix, survived Abraham Brotzman, executor, who died July 8, 18   ; the present occupant of the homestead was Ephraim Brotzman, and the present lessee of the ore-bed was the Glendon Iron Co., assignee of Charles Jackson, Jr., and the premises containing the ore-beds were in the occupancy of Hannah Brotzman, U. V. Brotzman and others of the defendants.

That the plaintiff was dependent for her support upon the

provisions in said will made for her and had made frequent requests and demands to have and enjoy the same, with all of which requests and demands the defendants had refused to comply, etc.:

Wherefore your oratrix prays your honor:

1. That your oratrix be accorded and reinstated in the rights, liberties and privileges provided for her and directed in said will.

2. That defendants be ordered to pay over to your oratrix said annual payments of one hundred dollars as directed in said will, with all arrearages of interest due thereon.

3. That your oratrix may have such other and further relief as the circumstances of the case may require and to your honor may seem proper.

The will, a copy of which was exhibited with the bill, provided, inter alia, as follows:

I give and bequeath unto my beloved wife Elizabeth, during her widowhood, in lieu of her dower or thirds out of my estate, the frame house (being the homestead), and garden attached thereto, together with all my household goods and kitchen furniture, with the necessary privilege in the barn, stable and outhouses, and two cows to be fed, stabled and pastured, and as much firewood and coal as she may reasonably want, to be delivered wherever she may direct on the premises, together with one third part of the wheat, rye, corn, potatoes and hay that shall be raised and made on the premises hereinafter devised unto my three sons, Abraham Brotzman, John Philip Brotzman and Josiah Brotzman. The grain to be divided in the bushel and to be taken and carried to the mill and to be ground or sold as she shall or may from time to time order and direct, and the flour and bran made therefrom, or so much thereof as she shall or may from time to time require, be brought and delivered to her up-stairs in the house free from any cost or charge whatever; under and subject however that my daughter Catherine Brotzman shall, as long as she shall remain single and unmarried, have the free and undisturbed use, liberty and privilege of the room up-stairs that she has now in her possession, together with the necessary privilege in the kitchen, cellar, yard, garden and outhouses, and free egress, regress and ingress to and from said room, and to be furnished

by my beloved wife during said term with as much provision as she may reasonably want without any cost or charge whatever. It is further my will and I hereby order and direct that in case that the said devise should, in the opinion of my son Abraham and my daughter Rachel and the survivor, be insufficient for the comfortable support and maintenance of my said wife and daughter Catherine during said term, then I order and direct that the sum of one hundred dollars shall be paid annually during said term to my said wife and daughter and the survivor out of the proceeds of the rent for the ore-bed.

To this bill the defendants, other than Rachel Riehl, executrix surviving, appeared and demurred, for cause alleging want of jurisdiction, adequate remedy at law and no relief grantable in equity. Rachel Riehl, the executrix surviving, then appeared, and on March 14, 1881, for answer to the bill said:

1. That the statements of fact made in the several sections of the bill of said plaintiff are true, and that the extracts from said will are correctly made, and a true and correct copy of said will is appended to said bill.

2. And further, that this defendant denies and disclaims having authorized any defence to the bill of said plaintiff by demurrer or otherwise, but avers that the prayer of said plaintiff is just and equitable, and that in the opinion of this defendant the devise mentioned in said will is insufficient for the comfortable support and maintenance of said plaintiff, and that the annual payments of one hundred dollars each, with arrearages of interest, are necessary therefor and should be promptly made.

Wherefore defendant respectfully prays your honorable court to make such construction of said will and decree as may carry out the intention of testator, and that she be dismissed hence with her reasonable cost in this behalf sustained.

The demurrer filed by the other defendants was overruled and they were assigned to answer. Their answer, filed February 27, 1882, substantially admitted the averments of the bill, but denied the alleged deprivation of rights and privileges and the liability of defendants for the annual payments, admitting one annual payment and alleging want of equity.

Issue having been joined, the cause was referred to *Mr. Wm. C. Shipman*, as examiner and master, who filed a report, over-

ruling certain exceptions thereto, on January 17, 1887, in which he found, in respect of the rights and privileges in the room, garden, cellar, yard and outhouses provided for the plaintiff by the testator's will, that it was the intention of the testator to give them to her so long as she remained single; that the devise in question was not a mere legacy charged upon the land, but an interest or estate; that the plaintiff had been deprived of these privileges, but that no specific relief in equity by way of reinstatement could be decreed, and the plaintiff's remedy was an action for damages. He further found that the provision for the payment of $100 annually to the plaintiff continued to her after the death of her mother; that the legacy was demonstrative payable out of the rent of the ore-bed and was to follow the rent of the ore-bed generally, without restraint or confinement to the then existing lease; that, though it was contended that the legacy could not be recovered by means of a bill in equity, but resort must be had to a common law action, and that it did not appear by proper averments in the bill that it was the opinion of the testator's daughter Rachel that the devise of the household and other privileges previously given to the plaintiff was insufficient for her support and maintenance, yet it was the opinion of the master that the omission from the bill of such averments was not fatal, but amendable: City v. Railroad Co., 15 W. N. 364; Commonwealth v. Coit, 15 W. N. 270; Commonwealth v. Reeves, 13 W. N. 45; and that if, on the one hand, the amount of the rent was payable by the lessee to the legatee, then the acceptance and receipt thereof by the devisees would make them trustees for the legatee and they would be obliged to refund to her: Story, Eq. J., §§ 1041, 1196; 4 Kent's Com., 307; McCoy v. Scott, 2 R. 222; Robb's App., 41 Pa. 45; Landis v. Scott, 32 Pa. 495; but, if the devisees of the realty were to be custodians of the fund and were authorized to receive and pay over the determinate and fixed portion of the rent as an annuity, then they were vested with the property for the benefit of another, were trustees under the will and the bequest was a testamentary trust; that he inclined to the latter alternative, and, citing Story's Eq. J., § 1041; Landis v. Scott, 32 Pa. 495; Anderson v. Henzey, 7 W. N. 39; Brown's App., 12 Pa. 337; Seibert's App., 19 Pa. 49, concluded that

the court sitting in equity had jurisdiction, and, finding that the rental of the ore-bed per annum had all along exceeded $100, reported a decree that the bill be dismissed as to Rachel Riehl, executrix, and the Glendon Iron Co., and that the other defendants pay to the plaintiff the sum of $1,370, the amount of her unpaid annuity, with interest from January 1, 1876, to January 1, 1887.

Exceptions to this report on the part of the plaintiff, over-ruled by the master and renewed on the filing of his report, were:

1. The master erred in not recommending a decree that the oratrix be accorded, and reinstated in, the rights, liberties and privileges provided for her and directed in said will, as prayed for.[1]

2. The master, after finding the fact that plaintiff has been deprived of said rights, liberties and privileges by defendants, erred in his conclusions of law that she cannot be accorded them and reinstated therein, and that she cannot be compensated in damages for such time as she may have been deprived of them.[2]

Various exceptions were filed by the defendants.

On June 6, 1887, the court SCHUYLER, P. J., disposed of the exceptions to said report in the following opinion and decree:

The last will of Joseph Brotzman, deceased, after making certain provisions for the testator's widow and his daughter, Catherine, proceeds as follows: "It is further my will, and I hereby order and direct that in case the said devise should, in the opinion of my son Abraham and my daughter Rachel and the survivor, be insufficient for the comfortable support and maintenance of my said wife and daughter Catherine, then I order and direct that the sum of one hundred dollars shall be paid annually to my said wife and daughter and the survivor out of the proceeds of the rent for the ore-bed."

In a subsequent part of his will the testator devises to his three sons, John, Abraham and Josiah, three contiguous tracts of land which they held in common, down to the death of the widow, the latter event occurring in 1875. Upon the death of the widow partition was made of these three tracts, and the

tract containing the ore-bed above mentioned fell to the lot of John. John subsequently died leaving a widow and three children, who succeeded to his title to the ore-bed, and are the real defendants in the present bill. The purpose of the bill is to obtain a decree that the defendants pay to the plaintiff, who is the "daughter Catherine" mentioned in the will, $1,100, with interest, the $1,100 representing eleven years of alleged arrearages from 1876 to 1886 inclusive, in the payment of the $100, which the testator directs to be "paid annually" out of the proceeds of the rent of the ore-bed. The learned master has recommended such a decree, and in so doing, we think, has committed error.

It will be noticed that the direction as to the payment of the $100 is not absolute, nor is the payment made to depend upon whether, in point of fact, the previous provision for the testator's widow and daughter was or was not sufficient, but the payment is made contingent upon the previous provision proving to be insufficient "in the opinion" of testator's son Abraham and his daughter Rachel. It is not for us to question the wisdom of such a bequest as this, nor does it lie in the mouth of the plaintiff to complain of its terms. True, both Abraham and Rachel might die, as Abraham did die, without forming any opinion on the subject; or they might, if living, arbitrarily refuse to form an opinion, and in either case the bequest would fall. But the testator's bounty was his own and he could annex his own conditions to it. He might have withheld it altogether and plaintiff would have had no just ground of complaint, and she has just as little ground to complain that the bequest was given on a condition that might never happen.

There is no dispute as to the testator's meaning. That is as plain as words can make it. The bequest is to vest only in case the previous devise should, in the opinion of testator's son Abraham and testator's daughter Rachel, be insufficient. Such being the condition on which the bequest is given, it is somewhat remarkable that the present bill, whose sole purpose is to enforce payment of the bequest, contains no averment that the condition has happened. The learned master passes over this serious omission very lightly, simply saying that it is amendable, and in so doing has adopted an opinion quite prevalent in the profession, that in equity amendments of the

pleadings are of right at any stage in the proceedings. This is a mistake. The rule as to bills is, that "after witnesses have been examined the court will not, unless under very special circumstances, or in consequence of some subsequent event, allow the bill to be altered or amended:" Story's Eq. Pl., § 887. We do not understand that this rule has been changed by the act of May 4, 1864, § 2, P. L. 775. The rule is a proper one and should be enforced. An opposite rule would but foster carelessness and tend to confusion and delay, without any corresponding good. We cheerfully concede that it is human to err. We also concede that even under our greatly simplified system of equity pleadings, mistakes may occur, even with the most careful pleaders, but when they do occur application to amend should be made at the earliest opportunity.

But, even if bills were amendable as a matter of course at any stage in the proceedings, it would not help the plaintiff, for in the case in hand there is nothing to amend by. There is no evidence to indicate that either Rachel or Abraham ever in fact formed an opinion as to the insufficiency of the devise. The only evidence on the subject is to be found in the testimony of Rachel herself, delivered four years after bill brought, and all that she says is, that she "knew that Catherine needs the $100 named in the will." Upon this testimony alone, although Rachel does not say when she acquired her knowledge, and although there is no pretence that it was ever communicated to defendants, the learned master recommends the decree referred to above.

Very little reflection will show that the decree recommended by the master is a hard decree; so hard that we should hesitate to adopt it for that reason alone. Had a demand in legal form been made on the defendants in 1876, it is fair to presume that they could have easily paid the $100, as the will directs, that is "annually;" whilst, if we adopt the decree recommended by the master, it might result in sweeping away their entire inheritance, and this through no fault of theirs. In the face of such a result, it is idle to talk about the plaintiff's legal rights, if she has any, as we think she has not. But concede, for the sake of the argument, that the plaintiff was under no legal duty to make a prior demand. It is

enough for our present purpose that she was under a moral duty so to do, and not having done so we think she has no standing in court. Plaintiff must remember that she is in a court of equity seeking equitable relief, and that whoever comes into a court of equity must come with clean hands. "It is not alone fraud or illegality which will prevent a suitor from entering a court of equity; any really unconscientious conduct, connected with the controversy to which he is a party, will repel him from the forum whose very foundation is good conscience:" 1 Pomeroy's Eq. Jur. § 404. She must also remember, that although equity follows the law, "a court of equity will in no case allow itself to be made the instrument of injustice:" Kerr on Injunctions, 6.

In its purely legal aspect the present case presents two questions of considerable difficulty. The first has already been hinted at, whether even at law a prior demand is not necessary. The second is, whether from a fair interpretation of the whole will, it was not the intention of the testator that the $100 bequest should cease at the death of the widow. In the view taken above, it becomes unnecessary to decide these questions. I will say, however, that as to both of them the inclination of my mind is in favor of the theory of the defendants. I also agree with the learned counsel for the defendants that the $100 bequest is made a charge on lands, but I cannot agree with him that this court, sitting as a court of equity, has no jurisdiction to enforce payment of such legacies. The original jurisdiction of courts of equity over legacies charged on land is undoubted. Indeed, until the rule was changed by legislation, the jurisdiction was exclusive: Story's Eq. Jur., § 602. By our own act, February 24, 1834, § 59, P. L. 84, similar jurisdiction is conferred on the Orphans' Courts, and a mode is provided for enforcing the payment of such legacies. By operation of act March 21, 1806, § 13, 4 Sm. L. 332, this mode must be pursued to the exclusion of all common law remedies. The latter act, however, has no application to equitable remedies, and an examination of the cases relied on to prove that the jurisdiction of the Orphans' Court to enforce legacies charged upon land is exclusive, will show that they are all cases where an attempt has been made to enforce payment of such legacies by a common law action. Every

lawyer knows how tenacious courts of equity are of a juris-diction that has once attached. Nothing short of a positive act of assembly can take away such jurisdiction, and there is no such act in reference to legacies charged upon land.

1887, June 6, bill dismissed at the costs of the plaintiff.

Upon the filing of the foregoing opinion and decree, the plaintiff took this writ specifying that the court erred:

1, 2. In not considering and sustaining the plaintiff's excep-tions.[1] [2]

11. In the final decree dismissing the bill.

*Mr. W. H. Armstrong*, for the appellant:

1. A court of equity having jurisdiction, with full proof of an equitable claim before it, should have power to make some decree. A decree of reinstatement in, or restitution of, rights, would not alone compensate for the years of their loss. Com-pensation in damages has been decreed again and again: Mas-son's App., 70 Pa. 26; Allison's App., 77 Pa. 221; Story's Eq. J., § 799; Koch's App., 93 Pa. 434; Bispham's Eq., § 37; Steele's App., 47 Pa. 441.

2. The equity once shown to exist, will not be permitted to fall for want of a trustee; nor by reason of any act or omission of the trustee; nor by reason of his refusal and neglect to exe-cute a power, if such power is so given that it is reasonably cer-tain that the donor intended that it should be exercised: Perry on Trusts, 3d ed., §§ 248, 250, 251, 255; 2 Pomeroy, Eq. J., § 988; 2 Story's Eq. J., 13th ed., 384. Authorities abound in support of the position that the omission of a necessary aver-ment is amendable: Darlington's App., 86 Pa. 512; Miller v. McDonald, 8 W. N. 502; Leach v. Ansbacher, 55 Pa. 85; Story's Eq. Pl. (Redf.), §§ 892–3.

3. A prior demand was repeatedly made, as the evidence clearly showed. Where the trust is denied, however, a prior demand is not necessary: Knight v. Reese, 2 Dall. 182; Keech v. Speakman, 1 Pa. L. J. 72. The question of jurisdiction, fully discussed by the master, whose decision was affirmed by the court, is passed, as a matter conclusively settled.

*Mr. B. F. Fackenthall* (with him *Mr. William Fackenthall*), for the appellees:

1. The plaintiff's rights in the house, garden, etc., as well as

to the annuity, ceased at her mother's death ; the case is on all fours with Kearns v. Kearns, 107 Pa. 575.

2. The house and garden privileges, as well as the annuity, were charged upon the real estate: Gibson's App., 25 Pa. 191; Buchanan v. Duncan, 40 Pa. 82; Steele's App., 47 Pa. 437. A complete remedy to recover a legacy charged on land is provided by § 59, act of February 24, 1834, P. L. 84, and the jurisdiction of the Orphans' Court is exclusive: Thomas v. Simpson, 3 Pa. 60; Downer v. Downer, 9 W. 60; Pierce v. Livingston, 80 Pa. 101; Craven v. Bleakney, 9 W. 19; Strickler v. Shaffer, 5 Pa. 240; Horner v. Hasbrouck, 41 Pa. 183; Burt v. Herron, 66 Pa. 400.

3. A statutory remedy having been provided, its directions shall be strictly pursued: § 13, Act of March 21, 1806, 4 Sm. L. 332. Apart from the act of 1806, it seems to be a principle of universal application that where a statute confers a new power or right and provides a particular mode by which it may be vindicated, no other remedy may be enforced: Ahl v. Rhoads, 84 Pa. 327; Hamersley v. Turnpike, 8 Phila. 314.

OPINION, MR. JUSTICE PAXSON:

Under the will of Joseph Brotzman, the provisions in favor of his daughter, Catherine Brotzman, are charged upon his real estate. Similar charges have been so held: Gibson's Appeal, 25 Pa. 191; Buchanan v. Duncan, 40 Pa. 82; Steele's Appeal, 47 Pa. 437.

By the 59th section of the act of 24th February, 1834, P. L. 84, it is provided that " when a legacy is or hereafter may be charged upon or payable out of real estate, it shall be lawful for the legatee to apply, by bill or petition, to the Orphans' Court having jurisdiction of the account of the executor of the will by which such legacy was bequeathed, whereupon such court, having caused due notice to be given to such executor, and to the devisee or heir, as the case may be, of the real estate charged with such legacy, and to such other persons interested in the estate, as justice may require, may proceed, according to equity, to make such decree or order touching the payment of the legacy out of such real estate as may be requisite and just."

In Pierce v. Livingston, 80 Pa. 99, it was said by SHARS-

WOOD, J., in commenting upon this section: "It is very well settled that the jurisdiction of the Orphans' Court under this section of the act is exclusive." This was the very point decided in the case, and the opinion is fortified by the citation of numerous authorities which fully sustain it. The 59th section of the act of 1834 gives a complete remedy in the Orphans' Court, and was evidently intended to exclude every other remedy and jurisdiction. That this is so as to common law remedies is admitted. Such result necessarily follows from the act of March 21, 1806, 4 Sm. L. 332, which provides that "in all cases where a remedy is provided, or duty enjoined, or anything directed to be done by any act or acts of assembly of this commonwealth, the directions of said act shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the provisions of the common law in such cases, further than shall be necessary for carrying such act or acts into effect." The learned judge below, however, held that this did not interfere with the jurisdiction of equity, and that a bill may still be filed in the Common Pleas to enforce the payment of a legacy charged upon land.

This is a narrow view of the act of 1806. Of what possible use is a bill in equity where an act of assembly has given a convenient and adequate remedy? The very corner-stone of equity jurisdiction is that a wrong exists for which no adequate remedy has been provided, and which the law fails to correct by reason of its universality. Our books are full of cases in which it has been held that where a remedy has been provided by act of assembly, equity has no jurisdiction. Thus it has been held that a bill in equity will not lie against an incorporated company where the act incorporating such company gives a remedy by a proceeding for the assessment of damages, and that such remedy must be pursued: Stump's Appeal, 38 Leg. Int. 205. We have innumerable decisions to the effect that in all such cases the remedy must be pursued. So, indeed, we have an act of assembly to that effect, the act of 1806: Spangler's Appeal, 64 Pa. 387. Other illustrations might be given and other authorities might be cited, were it necessary to show that under the act of 1806 a remedy given by an act of assembly must be "strictly pursued."

Prior to the act of 1834 the remedy universally adopted in

this state to recover a legacy charged upon real estate was a common law action. The books are full of such cases, and the practice continued long after the act of 1834 was passed. As was remarked by Justice COULTER in Strickler v. Sheaffer, 5 Pa. 240: "Such is the tenacity, however, of customs and forms, in their hold upon the mind, that the old practice still lingered and lingers in some parts of the state." These cases were invariably reversed when they reached this court. Some little of this tenacity for old forms and customs must still exist, if we may judge from the frequency with which uncertain remedies are resorted to where a certain, convenient, and adequate one is given by an act of assembly. The filing of this bill, however, cannot be said to be a result of clinging to old forms, as I have no knowledge of such a bill having been filed in this state before; certainly none such has been called to our attention. The learned master below, in his labored argument to sustain the jurisdiction of the equity side of the Common Pleas, cites no such case. He places his opinion mainly upon the ground that this is a testamentary trust. The will undoubtedly creates a charge upon the land. A ground-rent and a mortgage are respectively a charge upon real estate. Whether the will of the testator creates a testamentary trust is a subject foreign to this inquiry. The jurisdiction of the Common Pleas cannot be sustained upon this ground.

Pierce v. Livingston and numerous other cases have decided as plainly as language can make it, that under the act of 1834 the jurisdiction of the Orphans' Court is exclusive in the case of a legacy charged upon real estate. And we are of opinion that it excludes the equity as well as the common law jurisdiction of the Common Pleas.

Upon the merits we are all with the learned auditor, and are of opinion the plaintiff is entitled to the sum awarded her, but as she is in the wrong court, we cannot help her in this proceeding. The court reversed the auditor, and dismissed the bill. We are constrained in view of what has been said to affirm the decree, but it is without prejudice to her right to proceed under the act of 1834 in the Orphans' Court.

> The decree is affirmed, and the appeal dismissed at the costs of the appellant.