## J. T. KEIL v. CHARTIERS V. GAS CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued November 8, 1889—Decided February 17, 1890.
[To be reported.]

1. When a corporation invested with the right of eminent domain enters upon land without a compliance with the requirement that the compensation shall be paid or secured before such entry, trespass will lie, and the right of action vested in the landowner at the commission of the trespass is not divested by the subsequent tender and approval of security and the institution of proceedings to condemn the land.

2. But compensation for the permanent injury arising from the appropriation of the land, under the power of eminent domain, is to be assessed in the statutory proceeding; and evidence as to the effect of such appropriation upon the market value of the property a part of which has been taken, is inadmissible upon the trial of an action for the trespass of entering without previous payment or offer of security.

3. When such incompetent evidence has been admitted on such a trial, and the testimony discloses no other injuries, except the actual break-

ing of the plaintiff's close, if the evidence as to the permanent injury arising from the appropriation be not withdrawn from the consideration of the jury, the error in admitting it is not cured by an instruction to give the plaintiff damages only for the trespass on his rights down to the date of approval of the bond.

4. In an action for a trespass committed by the defendants' employee, an instruction that it was for the jury to judge whether exemplary damages should be given, was inadequate and too indefinite; the jury should have been informed as to the rules of law applicable, and should not have been permitted to give such damages, unless the injury was shown to be the result of the defendant's wantonness, or at least of his culpable inattention and neglect in the conduct of his business.

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 263 October Term 1889, Sup. Ct.; court below, No. 375 December Term 1887, C. P. No. 1.

On November 2, 1887, service was made of a summons in trespass brought by Jacob T. Keil against the Chartiers Valley Gas Company, to recover damages for the alleged unlawful laying of a natural gas main through a lot belonging to the plaintiff. Issue.

At the trial on May 22, 1888, the following facts were shown:

The defendant is a natural gas company incorporated under the act of May 29, 1885, P. L. 29, for the purpose of supplying natural gas to the public in the city of Pittsburgh and elsewhere, invested with the right of eminent domain, and duly authorized to lay its lines in the streets, highways and alleys of said city. In the month of August, 1887, it laid a line of large pipe along Berlin alley and Fifty-first street. In an acute angle formed by the intersection of said alley and street, lay a small triangular lot of ground belonging to B. and E. A. Darlington. Adjoining the Darlington lot was the lot of the plaintiff. Both lots were vacant, unimproved and uninclosed. When, in proceeding along the alley, the defendant's line reached a point near the intersection of the alley with the street, it was taken upon and across the Darlington lot, but was laid at such an angle with the street as to pass across one corner of the plaintiff's lot, occupying a few feet thereof. The pipe laid consisted of a two feet main and one or more smaller

pipes for carrying off waste gas, all placed in a trench dug to the depth of six feet.

Peter Keil, the father of the plaintiff and in charge of the property, testified that some time in August, 1887, having his attention called to the fact that the direction, in which the trench for the pipe was being made by the defendant's employees, indicated that it would strike the plaintiff's lot, the witness went to the foreman in charge and asked him where they were going to run that pipe; that the foreman replied that they were going to run up to Fifty-first street and elbow around and turn into the alley, whereupon the witness said, "that is all right. I have nothing to say," and walked away. A few days afterward he found that the pipe had been laid upon the plaintiff's lot. The witness was then asked:

Q. What was the market value of that lot before this was done? And what was its value with that pipe in, in the manner they put it in?

Objected to for the reason that a bond was tendered by the defendant for the damages done, shortly after the defendant entered upon the premises, and that it would therefore not be the fair measure of damages, because that is embraced in a subsequent suit which is pending.

By the court: Objection overruled; exception.[1]

Under this offer, the witness testified that the market value of the lot before the laying of the pipe line in it was $1,400, and its value afterwards was destroyed; it could not be sold as a lot; no prudent man would put up a house on it.

The plaintiff having called other witnesses who testified that by reason of the location and laying of the pipe upon the plaintiff's lot, and the consequent danger of leakage of natural gas into the cellar of any house that might be built upon it, the lot was largely depreciated in its market value, rested.

The defendant put in evidence the record of a proceeding in the Court of Common Pleas No. 2 of Allegheny county, showing that on September 28, 1887, the defendant company filed in said court its bond to Jacob T. Keil, securing the payment of compensation for the appropriation of the right-of-way easement over his lot, for the pipe line in question, and that on October 31, 1887, the court dismissed exceptions that had been filed to the bond and approved it. J. D. McCabe, an engineer

of the defendant company, testified that the laying of the line on any part of the plaintiff's lot was a mistake of the company's foreman; the knowledge of the witness as to how it happened was not personal, however, but had been received from the foreman, who at the time of the trial was in Indianapolis.

At the close of the testimony the court, COLLIER, J., charged the jury as follows:

This is an action of trespass to recover damages from defendant, a gas company, for going upon the lot of plaintiff without any authority of law whatever. It is conceded that the company went on the lot without any authority of law, and dug a trench, and put in a large gas pipe; and for that the plaintiff is entitled to damages, because the law does not permit any company, nor any person, to go upon the property of another and injure it in any way, without being liable to pay damages. But a short time after this injury, for which the plaintiff must have some damages, was done, about October 31st, I believe, the defendant company took regular proceedings under the law, by filing an appropriation plot, and bond securing plaintiff any damages for injury to the lot that he might show thereafter.

[It is shown that the defendant filed a bond after having gone on the land without authority, and that, of itself, would not cure the trespass. But it appears that afterwards, regular proceedings were had, and, from the date of the confirmation of that bond, the 31st of October, damages to the plaintiff would stop. You can give damages up to that date, but not after, because in that proceeding, when it comes to be heard, the plaintiff will get the difference in value of his lot before the pipe was put down and after, as affected by it. In other words, he will then get full damages for the injury to the value of his property. So, the plaintiff is entitled, without any question, to damages in the amount you may think this trespass cost him up to the 31st of October. That much he must have under the law.

The next question in dispute here between the counsel is, whether you shall add to that something to punish the defendant for going on this lot without authority. If you think from the testimony there was aggravation, outrage, wilfulness, gross-

ness, wilful disregard of a man's rights, you may add something by way of punishing.

The rule of law ordinarily in trespass is to give only compensatory damages; that is, money to compensate what the damage really was; full damages. The learned counsel for defendant contends that this was nothing but an ordinary going upon a man's land, cutting a ditch and putting a pipe down, without any intention to do any harm, or without doing any more than the ordinary damage; that there was no wantonness. He alleges there was some sort of a mistake. I do not see much evidence of it, but he contends there is nothing to make it a gross outrage. On the other hand, the learned counsel for plaintiff contends that the evidence shows maliciousness, grossness; that the outrage was gross, and he puts it on this ground, and it is for you to judge; that plaintiff heard the company were going on his land, and went to inquire whether it was really true (because if it was true, he might have proceeded in court and stopped them till they gave the proper bond and took the proper proceeding); was informed that they were not going that way, and when he got away they went upon the land, and, as he says, took a short route and did this injury. He contends that was a malicious, positive outrage upon his rights, and you ought to punish them for it. If you find such was the case, that there was grossness, outrage, wilfulness, maliciousness, or aggravation, under the circumstances, you might add a reasonable amount to what you think he is entitled to, up to the 31st of October, by way of punishment.

The case is not a very great one, but it involves the same principle regarding people's rights as a much larger one. So, if I have made myself understood, and I think I have, for the counsel do not disagree about the principle at all, could not, because it is too well established, you must give the plaintiff compensation for the trespass upon his rights, up to October 31st, whatever you think that is. All after that will be tried in the other case, how much this pipe has damaged him, and cannot be tried in this, after October. For the injury done up to that time you must give compensation; and if you find there was grossness, outrage, maliciousness, wantonness, in the conduct of the company in going on this lot, you may add such sum by way of punitive damages as you think proper.] [2]

You take the case under the evidence, and do right between the parties, remembering that both sides have their rights under the law.

The jury rendered a verdict for the plaintiff for $600. After argument, the court overruled a motion for a new trial, without opinion filed, and entered judgment on the verdict, whereupon the defendant took this appeal assigning for error:

1. The admission of plaintiff's offer.[1]
2. The part of the charge embraced in [ ][2]

*Mr. J. C. Doty* (with him *Mr. J. M. Kennedy*), for the appellant:

1. That the defendant is liable in this action only for damages for the trespass prior to the approval of the bond, October 31, 1887, and not for those resulting from the construction and permanent location of the pipe line, is clear: McClinton v. Railroad Co., 66 Pa. 404 ; Hartz v. Railroad Co., 21 Minn. 458. Although the court in its charge told the jury that they could not give damages after October 31, 1887, yet as the testimony admitted all tended to show depreciation in the value of the lot, and did not show any damage resulting from the trespass, the general effect of the charge was misleading, and permitted the jury to include in their verdict a portion, at least, of the damages for the easement appropriated. Such a misleading tendency of the charge is ground for reversal: Reineman v. Blair, 96 Pa. 155 ; Bishing v. Bank, 93 Pa. 79 ; Egbert v. Payne, 99 Pa. 239 ; Penna. R. Co. v. Berry, 68 Pa. 272 ; Stall v. Meek, 70 Pa. 181.

2. There was not a scintilla of evidence to justify the submission to the jury of the question of punitive damages. McCabe's testimony that the going on the plaintiff's lot was by a mistake was not contradicted. The fact that the plaintiff's lot was vacant, unfenced and unimproved, with no marks on the ground showing where the lines were, simply caused the defendant and its workmen to make an innocent mistake in locating its line. To leave the question of punitive damages to the jury, when there is no evidence which would warrant a verdict for other than compensatory damages, or even to instruct them that they may find such damages as they may

deem proper, is error: Phila. Traction Co. v. Orbann, 119 Pa. 37; Pittsb. etc. Ry. Co. v. Taylor, 104 Pa. 306; Rose v. Story, 1 Pa. 190; Amer v. Longstreth, 10 Pa. 145.

*Mr. A. M. Brown*, for the appellee:

1. The testimony as to the situation of the lot, its character and its value, before and after the trespass, as affected by the wrongful act of the defendant, was proper and competent for the information of the jury. The facts as to the approval of the defendant's bond, and its intention to appropriate the lot for its pipe line, were subsequently introduced on behalf of the defendant company, when it came to put in its testimony. When the facts were thus introduced, the learned judge carefully protected the defendant against any injustice in the ascertainment of the damages, and, in view of the amount of the verdict, it is manifest that the jury did not disregard the court's instructions.

2. There is no testimony in the case to show that the wrongful act of the defendant was simply a mistake. McCabe's testimony shows that he had no knowledge of the circumstances and was wholly unjustified in making such a statement. His own explanation shows that this assertion was an ingenious attempt to mislead the court and jury, and relieve the defendant from the consequences of a wilful wrong. Keil's testimony, showing the deception practiced upon him, was not contradicted or denied. The trespass was reckless, wanton and wilful. It was not mitigated by filing a bond three months later: Harvey v. Thomas, 10 W. 63. The court, however, gave the defendant, in the charge, the benefit of its "mistake" theory.

3. In support of the ruling of the court we cite the following authorities, showing that where a trespass is reckless, wilful or wanton, or there are circumstances of outrage or oppression, exemplary damages may be given: Porter v. Seiler, 23 Pa. 424; Nagle v. Mullison, 34 Pa. 48; Blair Iron & C. Co. v. Lloyd, 3 W. N. 103; Kennedy v. Way, Bright. 186; Orr v. Seiler, 1 Penny. 445; Flinn v. Graham, 3 Pittsb. 195; Neiler v. Kelley, 69 Pa. 403; McDonald v. Scaife, 11 Pa. 381; Dennis v. Barber, 6 S. & R. 420. For the acts of agents and servants, corporations and other principals are liable for exemplary dam-

ages to the same extent as individuals are liable for their own acts: Hazard v. Israel, 1 Binn. 240; Bank of Kentucky v. Bank, 1 Pars. 180; Taylor on Corporations, § 377.

OPINION, MR. JUSTICE WILLIAMS:

The appellant is a corporation clothed with the right of eminent domain. The appellee is the owner of a city lot fronting on Fifty-first street, in the city of Pittsburgh. In August, 1887, the gas company was engaged in the work of laying its gas main in Berlin alley and Fifty-first street under the authority of a city ordinance. As the line approached Fifty-first street it deflected westwardly, and, leaving the alley, entered a small lot belonging to B. and E. A. Darlington at a point near the line between Darlington and Keil, followed close to the line for some distance, and when within about twenty feet of Fifty-first street crossed over on Keil's lot, and when the line of the street was reached was about 5 feet over Keil's line. This the engineer in charge of the line testifies was done by the mistake of the workmen, and was not in accordance with the plan of the company. When the mistake was discovered, the gas company tendered a bond to Keil, which was subsequently approved by the court, and then instituted proceedings to secure the condemnation of the ground occupied by them, and an assessment of the damages sustained by the owner. Pending these proceedings, this action was brought in the month of November following the entry.

The entry, having been made without payment of the damages, or the offer of security therefor, was unauthorized, and trespass will lie to recover for the breach of the close. The subsequent tender of a bond, and proceedings for the condemnation of the land, do not divest the right of action for the trespass, although they transfer the adjustment of the damages necessarily consequent upon the entry under the right of eminent domain from the common law action to the statutory proceeding. The right to sue, however, vested at the commission of the trespass: McClinton v. Railway Co., 66 Pa. 404; and damages for the breach of the close, and for any deprivation of use, or other injury sustained prior to the tender of the bond, are recoverable in this action. But for the permanent injury by reason of the appropriation of part of Keil's lot, and the ef-

fect of such appropriation on the remainder, the damages are secured by the bond, and will be assessed in the proceeding instituted for that purpose, and now pending.

We have not been furnished with a copy of the plaintiff's declaration in this case, and we do not know for what items of injury he claimed a right to recover. The claim actually made on the trial, we can gather from the evidence upon which the jury were allowed to pass, and on which their verdict rests. From this it appears that no allegation was made of the destruction of buildings, fences, trees, or herbage; on the contrary, the lot was unoccupied and uninclosed, without buildings or improvements, and was open to the public. There was therefore no proof of damage presented except that which resulted from the mere breach of the close, and that which was done by the actual appropriation. The evidence all related to the permanent injury done by the entry and appropriation.

The plaintiff made a formal offer on the trial to prove by witnesses "what was the market value of that lot before this was done, and what was its value with that pipe in, in the manner they put it in." This was objected to as presenting to the jury the same injury, and the same measure of damages, which were to be considered and estimated in the pending proceeding for the assessment of damages for the entry and appropriation by the gas company. The learned judge of the court below overruled the objection, and admitted the evidence. This was clearly wrong. The objection was well taken, and the evidence should have been excluded. The injury which it showed the plaintiff to have sustained was that to secure which the bond had been tendered him, and to assess the amount of which proceedings had been begun on the petition of the gas company. The value of the land taken, and the depreciation in the value of that which was left by rendering its occupancy unsafe, or in any other manner, are questions that must come up, and be determined, in the proceeding to assess the damages; and to permit the jury to pass upon them in this case, is to expose the defendant to the danger of having two judgments rendered against him for one cause of action.

It is urged that this mistake was corrected by the learned judge in his charge to the jury, and ought therefore to be disregarded. He said, speaking of the pending proceeding to

assess damages done to the plaintiff: "He will then get full damages for the entire injury to the value of his property. So the plaintiff is entitled, without any question, to damages in the amount you may think this trespass cost him up to the 31st of October. That much he must have under the law." This is a correct statement of the law; and if the incompetent evidence covered by the first assignment of error had not been before the jury, it would have been an adequate instruction. But the incompetent evidence was before them, and there was no other proof of injury except that resulting from the mere breach of an uninclosed close. It was not withdrawn from them, nor were they cautioned to leave it out of consideration in making up the damages. They were instructed simply to "give the plaintiff compensation for the trespass upon his rights up to October 31st, whatever you think that is. All after that will be tried in the other case, how much this pipe has damaged him, and cannot be tried in this, after October. For the injury up to that time you must give compensation." As there was no proof of other items of damage done, and no instruction turning the attention of the jury away from the incompetent testimony before them, the jurors would naturally understand that they were at liberty to consider it, and from it estimate the injury sustained by the plaintiff. Their attention should have been drawn to the trespass, and its immediate consequences, as distinguished from the injury resulting from the appropriation of a part of the plaintiff's lot, and the consequent depreciation in value of the part not appropriated.

The instruction on the subject of exemplary damages was both indefinite and inadequate. The court presented this subject to the jury in this manner: "The learned counsel for defendant contends that this was nothing but an ordinary going upon a man's land, cutting a ditch, and putting a pipe down, without any intention to do any harm, or without doing more than ordinary damage; that there was no wantonness." He then stated the position of the plaintiff thus: "On the other hand, the learned counsel for plaintiff contends that the evidence shows maliciousness, grossness; that the outrage was gross; and he puts it on this ground, and it is for you to judge." But jurors ought to dispose of questions submitted to them upon the evidence, and in accordance with certain general rules that

should govern them in its application. What evidence was there in this case to show malice on the part of this gas company or its officers? Did a mistake of the laborers engaged in laying the pipe show malice on the part of their employer? Was the gas company to be punished for the trespass of its employees, committed without its knowledge, and against its instructions, by imposing smart money on it? The jury were left with no more definite information on this subject than they could gather from the direction, "it is for you to judge." Unless there was evidence showing the purpose of this company to oppress or injure the plaintiff unnecessarily, or at the least showing culpable inattention and neglect in the conduct of its affairs, resulting in an unnecessary injury to the plaintiff, there was no reason for imposing exemplary damages. The ends of justice are fully met, under ordinary circumstances, when the employer makes full compensation for the trespass of his employee, without subjecting him to punishment for his employee's malice or cruelty.

> The judgment is reversed, and a venire facias de novo awarded.