## Keilbach *v.* Metropolitan Life Insurance Company, Appellant.

Argued April 18, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Carroll Caruthers,* with him *Thomas G. Taylor,* for Metropolitan Life Ins. Co., appellant.

*Henry E. Marker, Jr.,* with him *Marker & Rial,* for Benefit Association of Railway Employees, appellant.

*Fred B. Trescher,* with him *Kunkle, Trescher & Snyder,* for appellee.

OPINION BY DITHRICH, J., July 19, 1945:

These appeals are brought by the defendants from the judgments rendered against them in two actions of assumpsit on insurance policies. Plaintiff brought one action on the double indemnity provision of a life insurance policy and the other on a policy of accident insurance. The same issue was involved in both cases, viz., whether plaintiff's decedent died as a result of an accident or from natural causes. The cases were tried together and separate verdicts and judgments were entered in favor of the plaintiff. On appeal, the cases were argued together and will be disposed of in this one opinion.

The two policies were issued to Richard Keilbach. In both policies, the plaintiff, wife of the insured, was the named beneficiary. The policy of life insurance issued by the Metropolitan Life Insurance Company contained the usual double indemnity provision, whereby the company agreed to pay additional benefits ($1,000) upon ". . . due proof of the death of the insured, as the result, directly and independently of all other causes, of bodily injuries sustained solely through external, violent and accidental means . . ." The policy of accident insurance issued by the Benefit Association of Railway Employees contained a like provision in which the association agreed to pay the principal sum ($1,000) for loss of life caused by "such injury"; "such injury" being defined as ". . . bodily injuries . . . which are effected directly and independently of any and all other causes, solely through External, Violent and Accidental means . . ."

The insured worked at the Jeannette plant of the Pennsylvania Rubber Company, about twenty miles from his home in Smithton. On the day of the accident, June 23, 1943, he was working on the night shift from 1:00 a.m. to 7:00 a.m. He arrived home from work around 8:00 a.m. and complained of not feeling well as a result of drinking a bottle of Coca Cola too fast. He went to bed as he usually did, at 8:30 or 9:00 a.m., and remained there till 4:00 p.m. At 5:30 p.m. he went back to bed. He was sleeping when the plaintiff was in his room between 9:00 and 9:30 p.m. His bedroom was on the second floor. Beside the head of the bed there was a cement hearth. On the hearth, about an arm's length from the bed, was a cedar chest, on which he kept his cigarettes and an ash tray. A metal bucket or kettle was also on the hearth. While the plaintiff was downstairs in the basement, about 9:30 p.m. she heard a thump or a thud. She went back up to the bedroom in which decedent had been sleeping. There she found him lying on the floor parallel to the bed with his head on the cement hearth. The bucket

was upset beside his shoulder. He was dazed, semi-conscious, unable to speak. His left eye was discolored and there was a bruise on the left side of his face. His nose was bleeding and about three o'clock in the morning he began to vomit. Dr. Post, who examined him that night, found him very irrational and confused and unwilling to cooperate. He remained at home for five days and went back to work on the sixth day after the accident. Four days later he lapsed into a coma while at work. He was taken to the home of his mother-in-law in Jeannette, and later to the hospital where he died the same day. The cause of his death was a cerebral hemorrhage. An examination of the fluid in his spinal cord showed that the cerebral hemorrhage had occurred sometime prior to the date of death.

The appeal raises the question whether there was sufficient evidence produced to prove that decedent's death was caused solely by external, violent, and accidental means. The burden of proving that the death was caused by such means was on the plaintiff: *Lederer v. Metropolitan Life Ins. Co.*, 135 Pa. Superior Ct. 61, 4 A. 2d 608; *Lubowicki v. Metropolitan Life Ins. Co.*, 114 Pa. Superior Ct. 596, 147 A. 649. The cases were submitted to the jury on the question whether the cerebral hemorrhage, the admitted cause of death, *was produced* by the fall or whether it *caused* the fall. It is the contention of the appellants that from the evidence adduced either conclusion is equally probable, and that the plaintiff has failed to meet the burden of proof. We do not agree with this contention. The record contains sufficient evidence to support a finding that the fall caused the hemorrhage. The plaintiff, a neighbor, and two fellow workmen testified that decedent appeared to be in good health before the accident. The two physicians who examined him were of the opinion that the hemorrhage resulted from the fall. There is the circumstantial evidence of the thump and the position in which the plaintiff found him after the fall. From this testimony and circumstantial evidence

the jury might reasonably have inferred that the fall caused the hemorrhage. The burden of proof does not require direct proof of the precise cause of the fall, nor is it essential that there be eye-witnesses: *Stewart v. Prudential Insurance Co. of America,* 92 Pa. Superior Ct. 256; *Pomorskie v. Prudential Insurance Co. of America,* 318 Pa. 185, 177 A. 783; *Taylor v. General Accident Assurance Corp., Ltd.,* 208 Pa. 439, 57 A. 830.

Appellants also assign as error the admission of the opinions of Dr. Post and Dr. Garman given in answer to hypothetical questions. An expert may express an opinion based on an assumed state of facts which the evidence tends to establish: *Howarth et ux. v. Adams Express Co.,* 269 Pa. 280, 283, 112 A. 536. The facts which were assumed in the hypothetical questions are of record in the case. Cf. *Gyulai v. Prudential Insurance Co. of America,* 135 Pa. Superior Ct. 73, 4 A. 2d 824. The fact that they were introduced in evidence after Dr. Post had testified does not destroy the competency of his opinion. "As the order of evidence is an administrative function, the judge may permit an examining counsel at any stage to include in a hypothetical question facts of which he proposes to furnish evidence, the answer being received subject to be stricken out in case the necessary evidence is not furnished:" 32 C.J.S. 361, Evidence, §552. The deposition of Dr. Garman, taken before trial, was properly admitted. "The evidentiary facts should ordinarily precede the hypothetical question. However, this rule will not exclude a deposition taken before trial, if the assumed facts have been proved before it is offered in evidence. The court in its discretion may permit the question to anticipate proof of some of the facts, relying on the assurance of counsel that such facts will be proved later. In such a case, if the supporting evidence is not afterward given, the court should instruct the jury to disregard the opinion. Where expert testimony is offered by way of answers to hypothetical questions, much must

be left to the discretion of the presiding judge:" 20 Am.
Jur. 668, Evidence, §796.

The judgments are affirmed.