# Commonwealth v. Irvin

*Jay L. Benedict*, District Attorney, for Commonwealth.

*Kenneth F. Lee*, for defendant.

EPPINGER, P. J., October 11, 1966.—Defendant was operating a motor vehicle which was involved in an accident. After the accident, he appeared to several observers to be under the influence of intoxicating liquor. From their testimony alone, the jury could have found defendant guilty of the offense.

When the officer had completed his investigation at the scene, he took defendant into cusody, and while they were going to the office of the justice of the peace, the officer asked him if he would go to the hospital for a blood test. Defendant replied: "No".

No objection was made to the testimony by defendant's counsel until the officer's testimony on direct examination was concluded. The District Attorney then turned the witness over to the defense for cross-

examination. At that point, defendant's counsel objected to the question and answer concerning the officer's request for a blood sample and asked to have the evidence stricken. The court overruled the objection.

Later in the crossexamination, the defense attorney asked the officer whether he had asked defendant to take any tests other than the blood test. The officer replied that he did not ask for any tests, but that he did ask for a specimen of urine. At this point, the District Attorney objected unless defendant was prepared to concede the results of the test. That objection was overruled. The defense attorney pursued the matter with this colloquy:

"Q. Why did you ask him for a sample of urine?

"A. To further establish my opinion.

"Q. For the purpose of having chemical tests run on the urine to determine whether or not he was intoxicated?

"A. Yes, sir.

"Q. This is a second test, you first asked him to make a blood test which he refused, but he went along with the urine test, is that correct?

"A. Right".

Undoubtedly, this was for the purpose of showing that while defendant had refused to cooperate in giving a blood sample, he did give a urine specimen. The unfortunate part of the question was that in asking it, defendant virtually pressed the District Attorney into proving what was done with the specimen.

This led to pages of testimony concerning the taking of the specimen, the results of the test and the validity of any urine test. After it was all in, the court ordered it stricken and instructed the jury to disregard it because the evidence failed to trace the specimen from the moment the specimen was taken until the test was made.

After a verdict of guilty, defendant's motion for a

new trial is based on two points: first, that the court erred in admitting the testimony by the prosecuting officer that defendant had refused to take a blood test, and second, that the court erred in hearing the evidence of the urine alcohol test and then ruling it was inadmissible, even though the court instructed the jury to disregard it.

In this connection, the court, President Judge Chauncey M. Depuy presiding, instructed the jury as follows:

"Members of the jury, listen carefully, because there is a problem and (sic) a scientific test, in taking a sample, whether it is a sample of urine or a sample of blood, there has to be a tracing from the point the sample is taken, to the laboratory, and through the laboratory, every moment of the day and night, as to who had them in their custody, that nobody tampered with them.

"This is a serious difficulty in every case where scientific laboratory tests are offered in evidence. We have just concluded on the whole evidence here that we cannot admit the test and are ordering it stricken from the record, and all evidence regarding it is stricken from the record, regarding the taking of the sample, its transmission to the hospital, and the procedure whereby it was tested at the hospital, on the grounds that it isn't specific enough to make certain that foreign matters of any sort were not involved in the test, so it is better to disregard it entirely.

"So we are going to proceed with the case on the basis of the other evidence, the same as though there were no taking of evidence about the urine test. And then you have the other evidence that you have heard and will hear that the people testified to and will testify to as to what happened at that time, the same as in so many of the cases where the charge is operating under the influence, based upon observation of competent

citizens who were in or about the scene or elsewhere, the State Police officer and so forth. You will have to decide the case on that basis and ignore the question of the urine sample and the testing, disregard all of that latter evidence".

The court also instructed the jury during the charge: "Now, the urine test we have ordered stricken from the evidence and you folks will disregard it".

Statutory sanction has been given in Pennsylvania only to the taking of chemical tests of breath: Act of July 28, 1961, P. L. 918, 75 PS §624.1. In the taking of the breath sample, the operator's consent is required. This act does not limit testimony on intoxication to "breath tests", however. It was held in Commonwealth v. Tanchyn, 200 Pa. Superior Ct. 148, 188 A. 2d 824, cert. denied 84 S. Ct. 138, 375 U. S. 866, 11 L. Ed. 2d 92, that blood tests showing alcoholic content of a motorists' blood was other evidence and was not excludable under this act.

But in a group of cases decided under similar acts, the appellate courts of other jurisdictions have held that since the operator's consent is required, his refusal to take a sobriety test may not be shown as constituting an admission of guilt: State v. Severson, 75 N. W. 2d 316 (N. Dak.) ; Stuart v. District of Columbia, 157 A. 2d 294; People v. Stratton, 143 N. Y. S. 2d 362.

We are asked to conclude that because Pennsylvania's breath test requires consent, consent must also be given for the taking of blood. We cannot do this.

Some jurisdictions, in attempting to overcome what was thought might be an invasion of constitutional rights, adopted what are called implied consent statutes. Under these acts, a person is not required to consent, but if he does not, his license can be revoked after due notice and hearing on the basis of his refusal. See Walton v. City of Roanoke, 204 Va. 678, 133

S. E. 2d 315; Finocchairo v. Kelly, 11 N. Y. 2d 58, 226 N. Y. S. 2d 403, 181 N. E. 2d 427, cert. denied 370 U. S. 912.

Apparently, no existing State statute now requires a motorist to submit to any tests. But since the trial of this case, the United States Supreme Court has decided the case of Schmerber v. State of California, 384 U. S. 757, 86 S. Ct. 1826 (1966). In that case, a physician withdrew, at the direction of a police officer, a blood sample from a person accused of operating a motor vehicle while under the influence of intoxicating liquor, and the results of that test were admitted into evidence in the case.

The Supreme Court held that there was no violation of the constitutional privilege against self-incrimination, nor was there an unlawful search and seizure. Where the blood was taken at a hospital under proper conditions, defendant cannot complain, the Supreme Court held.

If, as the Supreme Court held, it is not violation of the constitutional rights of defendant to forcibly take blood from him and admit the results of the tests conducted upon that blood into evidence, it follows that it is not error for a court to admit into evidence that defendant refused to permit blood to be taken from his body for the purposes of making such a test. A reading of the Schmerber case would indicate that force could be applied in order to get the sample of defendant's blood in a proper case. Certainly the officers, doctors and others who were present at the time an effort was made to get a blood test could say how difficult it was to get it by reason of the conduct of defendant. This would bear on his guilt or innocence. We are assuming that it is a fair conclusion that a person who was innocent of the charge would be willing to give up his blood for the purpose of establishing his innocence whereas a person who had consumed too much alcohol

would be reluctant to have blood extracted from his body because the test would undoubtedly tend to prove his guilt.

Therefore, comment on defendant's refusal to give a blood sample where he is charged with operating under the influence is proper and does not violate any of his constitutional rights.

On the reasoning supplied in the Schmerber case, we also find that the taking of blood from a defendant in a prosecution for operating a motor vehicle while under the influence of intoxicants for purposes of making a test on that blood to determine the alcohol content does not violate article I, sec. 9, of the Pennsylvania Constitution, the prohibition against self-incrimination, nor does it violate article I, sec. 8, of that Constitution regulating searches and seizures.

Generally, where evidence is improperly admitted, and the trial court in this instance decided that the evidence as to the urine test was improperly admitted, the court may so charge and thus overcome its effect: Cadwallader v. Brodie, 13 Atl. 483, 12 Cent. 152, 8 Sadler 609; Supplee v. Timothy, 124 Pa. 375, 16 Atl. 864, 23 W. N. C. 386; Kiel v. Chartiers Valley Gas Co., 131 Pa. 466, 19 Atl. 78.

The order of evidence is discretionary with the trial court. Thus, it was held in the case of Keilbach v. Metropolitan Life Insurance Company, 157 Pa. Superior Ct. 590, 43 A. 2d 652, that a court could permit an examining counsel at any stage to include in a hypothetical question facts which he proposed to prove. The answer was received subject to being stricken out in case the necessary evidence was not furnished.

In the present instance, the court, having determined that the evidence was inadmissible, adequately instructed the jury to disregard it, thus turning the jurors' attention to a consideration of the admissible evidence which was before it.

ORDER OF COURT

Now, October 11, 1966, the motion for a new trial is overruled, and defendant is directed to appear for sentencing at a time fixed by the District Attorney. Exception granted to defendant.