590

SEPTA, Petitioner *v.* Workmen's Compensation Appeal Board (Saxon), Respondents.

Argued April 4, 1984, before Judges ROGERS, CRAIG and BARRY, sitting as a panel of three.

*Thomas F. McDevitt, Thomas F. McDevitt, P.C.,* for petitioner.

*Herbert Braker,* for respondent, Ernestine Saxon, widow of Herbert Saxon.

OPINION BY JUDGE CRAIG, May 30, 1984:

The Southeastern Pennsylvania Transportation Authority (SEPTA) questions the award of fatal claim benefits to Ernestine Saxon, widow of Herbert Saxon.

We must decide if substantial evidence supports the referee's findings of fact and if testimony by the claimant's expert witness was based upon hypothetical questions containing facts unsupported by, or contrary to, the evidence.

The referee found that Mr. Saxon was employed as a mechanic in SEPTA's garage for twelve years. On October 17, 1977, during his 9:00 a.m. coffee break, Mr. Saxon suffered an acute myocardial infarction, resulting in cardiopulmonary arrest and death that afternoon.

The referee also made the following pertinent findings of fact:

> 4. During the course of said twelve years Defendant's garage was poorly ventilated, exposing decedent to certain noxious and pervading fumes in the form of carbon monoxide emanating from the exhaust systems of as many as twelve buses under inspection and/or repair at one time by Defendant's employees each day since decedent's employment sometime in 1965.
>
> . . . .
>
> 6. The ventilation system installed by Defendant in approximately 1971 was seldom used by Defendant's garage employees and not kept in good repair.

7. Mechanics inspecting Defendant's buses could only run the engines 2-3 minutes before being "smoked out" and had to open the two outside doors of the garage in winter for ventilation.

8. Carbon monoxide inhaled by decedent over the years and on the day in question was a primary cause of his acute myocardial infarction on October 17, 1977.

The referee concluded that Mr. Saxon suffered a work-related injury in the course of his employment and awarded benefits to Mrs. Saxon; the board affirmed.

*1.*

First, SEPTA contends that the evidence does not support the referee's findings concerning ventilation in the garage (Nos. 6 and 7). We must reject that contention.

Mr. Saxon's fellow mechanic, Bernard Robinson, testified that the garage has two large doors, one city block apart, and a below-floor ventilation system; the building has no skylights or windows.

He also testified that the old ventilation system "didn't work at all" and that the new system, installed six years ago, did not work well. Specifically he stated that the system's hoses, which attach to bus exhaust pipes, did not draw exhaust sufficiently, that his co-workers did not use them approximately 25% of the time, and that SEPTA had not replaced broken hoses promptly.

Further, he stated that the garage doors were normally open in the summer for ventilation, but that when the temperature dropped below fifty degrees, the doors were closed. Thus, when the fumes got heavy in winter, workers would have to open the doors three or four times a day for fresh air.

Finally, Mr. Robinson stated that on a Monday morning, when Mr. Saxon suffered his heart attack, there could be as many as twenty to twenty-two buses in the garage and that, normally, a dozen bus engines run simultaneously.

2.

SEPTA next contends that substantial record evidence does not support the referee's findings that Mr. Saxon was exposed to and inhaled carbon monoxide during the twelve years of his employment and on the day of his death (Nos. 4 and 8). Again, we must disagree.

An injury or death resulting from a mechanic's accidental inhalation of noxious gases from a motor vehicle is compensable. *Johnston v. E. E. Orcutt Garage,* 103 Pa. Superior Ct. 507, 157 A. 46 (1931). Moreover, the party who prevails below is entitled to the benefit of the most favorable inferences drawn from the evidence. *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 590, 377 A.2d 1007 (1977); resolutions of credibility and evidentiary weight are for the fact finder and not this court. *Id.*

Here, another mechanic, Blase Massaro, testified that, during a normal working day, there were exhaust fumes present in Mr. Saxon's work area.

As to environmental conditions on October 17, 1977, the referee had sufficient record evidence to support the inference that Mr. Saxon had inhaled carbon monoxide.

As noted above, Mr. Robinson testified that there could be as many as twenty to twenty-two buses in the garage on a Monday morning. Mechanic Robert Hanna testified that, five minutes before the decedent's coffee break, bus engines were running in the garage. Indeed, the day foreman, James Council, stated that,

as part of his early morning schedule, Mr. Saxon jockeyed buses. Although Mr. Hanna testified that, before he collapsed, the decedent was pouring water into the bus and was "getting ready to move ... [it]," the referee was free to choose between conflicting accounts. *Id.* Lastly, climatological data charts admitted into evidence reveal that, on October 17, the temperature ranged from a low of thirty-eight to a high of fifty-one degrees. This fact corroborates Mr. Hanna's observation that "it was cold that day," and Mr. Robinson's testimony that the garage doors were closed.

Thus, taken as a whole, the testimony indicates a significant amount of engine activity within a closed environment on the morning of Mr. Saxon's heart attack.

### 3.

As to causation, the referee relied upon the testimony of Dr. William Fraimow, a specialist in internal medicine, cardiology and pulmonary diseases, who, in response to two hypothetical questions, stated that Mr. Saxon's employment caused his death.

At the hearing, counsel for SEPTA objected to the questions because they allegedly did not contain all the facts of record. On appeal, SEPTA now contends that the hypothetical questions contained facts unsupported by, or contrary to, the evidence.

Hypothetical questions must be based on matters which appear of record and on facts which are warranted by the evidence. *Serafin v. Workmen's Compensation Appeal Board,* 62 Pa. Commonwealth Ct. 413, 418, 436 A.2d 1239, 1241 (1981). The framer of a hypothetical question, however, does not commit reversible error when the difference in the actual facts and the assumed facts is not "so great" as to render the question improper. *Astro Remodeling v. Work-*

*men's Compensation Appeal Board,* 80 Pa. Commonwealth Ct. 552, 555, 471 A.2d 1320, 1322 (1984). Also, a hypothetical question need not encompass the assertions of both the proposing and the opposing parties; rather, a party may state specifically the particular facts he believes find support in the evidence and ask the opinion of the expert on such facts, assuming them to be true. *Battistone v. Benedetti,* 385 Pa. 163, 169-70, 122 A.2d 536, 539 (1956).

We find no reversible error in the questions as framed. In the two hypotheticals, claimant's counsel asked Dr. Fraimow to assume, among other things, that (1) during the course of his employment and on the day of his death, Mr. Saxon was subject to bus fumes, smoked cigarettes, and was jockeying buses for an hour before his collapse, (2) the building had no natural ventilation other than doors, (3) employees used the new ventilation system only 25% to 50% of the time, (4) the concentration of fumes was heavier when the garage doors were closed, and (5) on October 17, the doors were closed.

Although claimant's counsel may have overstated the ventilation system's percentage of employee non-use by 25%, an insignificant error under *Astro Remodeling,* the record evidence summarized above otherwise supports the assumed facts.

### 4.

Finally, SEPTA contends that Dr. Fraimow's testimony is equivocal, and thus incompetent. *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board,* 77 Pa. Commonwealth Ct. 202, 465 A.2d 132 (1983). We disagree.

Dr. Fraimow testified that "the carbon monoxide in the exhaust fumes that he [Mr. Saxon] was exposed to that morning precipitated the myocardial infarction" and that "[c]arbon monoxide was the factor

that caused his death.'"[1]  *Cf. Yakemowicz v. Workmen's Compensation Appeal Board,* 59 Pa. Commonwealth Ct. 41, 428 A.2d 781 (1981) (although physician testified that there can be a direct relationship between carbon monoxide inhalation and an aggravation of a coronary insufficiency, he could not state with a reasonable degree of medical certainty that exposure to carbon monoxide caused claimant's acute myocardial infarction).

Accordingly, we affirm.

### ORDER

Now, May 30, 1984, the order of the Workmen's Compensation Appeal Board, dated March 17, 1983, No. A-83805, awarding fatal claim benefits to Ernestine Saxon, is affirmed.

---

[1] Dr. Fraimow explained that carbon monoxide is one component of exhaust fumes and prevents hemoglobin from carrying oxygen to the body's tissues. Noting that carbon monoxide "can build up in the blood," that Mr. Saxon had been exposed to exhaust fumes for many years, that he was a cigarette smoker, that he worked in a closed environment, and that he had engaged in physical activity that morning, Dr. Fraimow explained that carbon monoxide was "a very major factor" in Mr. Saxon's death.