## Werner v. Commonwealth

*Gregory G. Stagliano,* for plaintiff.
*Celeste Yvonne Lamb,* for defendant.

HAZEL, *J.,* August 28, 1986 — On August 9, 1982, plaintiff, Charles Werner, an in-patient at Haverford State Hospital committed an act of self-mutilation by removing his eye with a blunt stick. The above-captioned matter commenced on July 25, 1984, with the filing of plaintiff's complaint in trespass wherein it is alleged that this injury was the result of defendant Haverford State Hospital's negligent failure to properly treat and supervise plaintiff. A jury trial was conducted on December 3, 4 and 5, 1985. On December 5, 1985, the jury returned a verdict for defendant. Plaintiff filed a timely motion for new trial and on February 27, 1986, the court entered an order denying this motion. Plaintiff now appeals, thus necessitating this opinion.*

---

*In writing this opinion the court is without the benefit of a complete transcript, plaintiff having requested only a part of the trial record in pursuit of its post-trial motion. Accordingly, to the extent necessary, the court will rely on its own notes and recollection of the testimony heard at trial in considering the issues raised by this appeal.

A

The determinative issue addressed by the trial court, and raised in post-trial motions and on this appeal is whether section 7114 of the Mental Health Procedures Act, granting immunity from civil liability in the absence of willful misconduct or gross negligence, is applicable in an action brought by a patient against a mental health institution where negligent treatment and supervision is alleged. See, 50 P.S. §7114. Section 7114(a) provides:

§7114. Immunity from civil and criminal liability

"(a) In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient care or leave of absence, or that the restraint upon such person be otherwise reduced, or a county administrator or other authorized person who denies an application for voluntary treatment or for involuntary emergency examination and treatment, shall not be civilly or criminally liable for such decision or for any of its consequences."

Plaintiff offered evidence at trial in an effort to support allegations that defendant acted recklessly and/or negligently in failing to adequately supervise, treat, diagnose and restrain plaintiff. See Complaint paragraph 18 (a) - (i).

Plaintiff was admitted to Haverford State Hospital in 1981, where he was diagnosed as suffering from schizophrenia, paranoid type. On Sunday evening August 8, 1982, plaintiff was placed in full leather restraints after he burned his right eyelid with a cigarette. Plaintiff claimed that this act was committed on a command from Jesus Christ. During the

hours following this incident and on the following day plaintiff was evaluated by Dr. Simenson, the treating psychiatrist, to determine whether plaintiff could be released from restraints. At about 2:00 p.m., August 9, 1982, Dr. Simenson found that plaintiff seemed to return to "his usual self," said "he felt good," and "promised that he would be good." Simenson ordered plaintiff be released from leather restraints. At 7:00 p.m. that evening, plaintiff was discovered while in the act of attempting to remove his right eye.

Testimony demonstrated that while at Haverford State, plaintiff was treated with Navane, an antipsychotic drug, and Dalmane, a sleeping medication, on an "as needed" basis. Plaintiff's expert reviewed defendant hospital's records and opined that the record-keeping was "deviant" and that, assuming a factual basis put forth in plaintiff's counsel's hypothetical question, the decision to reduce the restraints was inappropriate; that defendant's diagnosis and treatment fell below the standard of care due and was a substantial contributing factor in bringing about plaintiff's injury. Defendant's expert witness, after reviewing the same records, opined, in response to hypothetical questions put forth by defense counsel, that the decision to reduce restraints was appropriate, that plaintiff had been properly diagnosed and treated with the drug Navane.

The court charged, in pertinent part, as follows:

## ISSUES IN THE CASE

Plaintiff claims that he was injured and suffered damages as a result of the negligent and/or grossly negligent conduct of defendant through its agent. Plaintiff has the burden of proving these claims. Defendant denies these claims. It is to be noted that

defendant does not have to prove its freedom from negligence or grossly negligent conduct, nor does it have to prove that such negligent or grossly negligent conduct was not a substantial factor in bringing harm to plaintiff. Rather, it is plaintiff who must prove his claims.

In accordance with the Mental Health Procedures Act, mentally ill patients are to be cared for with the least restrictions consistent with adequate treatment. The act and other provisions of the law also provide that when restraints upon a mentally ill person are reduced, defendant through its agents is liable to plaintiff only if the decision to reduce restraints constitutes gross negligence and such gross negligence was a substantial factor in causing harm to plaintiff.

With respect to any additional allegations of inadequate treatment on the part of defendant through its agent, other than a reduction in restraints, defendant, through its agent is liable to plaintiff upon proof that such treatment was negligent as opposed to grossly negligent; and that such negligence was a substantial factor in causing harm to plaintiff.

Based upon the evidence presented at this trial, the issues for you to decide in accordance with the law as I shall give it to you are:

1. Was defendant, through its agent Dr. Simenson, grossly negligent in its decision to reduce restraints upon plaintiff? And if it was . . .

2. Was that grossly negligent conduct a substantial factor in bringing harm to plaintiff?

3. Was defendant, through its agent Dr. Simenson, negligent in its treatment of plaintiff, other than in its decision to reduce restraints upon plaintiff? And if it was . . .

4. Was this negligent conduct a substantial factor in bringing harm to the plaintiff?

In light of the foregoing we may summarily reject plaintiff's suggestion that since malpractice is not within the conduct specifically enumerated in section 7114, "the statute does not apply to plaintiff's case at all." See statement of matters complained of an appeal, paragraph 3 (c). The jury was directed to apply the gross-negligence standard only when considering the decision to reduce restraints, a major portion of plaintiff's case. Regarding allegations of inadequate treatment, or malpractice, generally, plaintiff received the benefit of the negligence standard. Section 7114 clearly and unambiguously provides immunity from liability to one who participates in a decision "that the restraint upon such person be otherwise reduced." The reduction or removal of restraints testified to in this case falls squarely within this immunity section. See Sanders v. Latrobe Area Hospital Inc., 14 D.&C. 3d 458 (1980).

Next, we consider plaintiff's suggestion that section 7114 was intended to apply only in cases brought by third parties who are injured as a result of acts committed by patients who fall within the Mental Health Procedures Act. This contention is wholly unsupportable. "The object of all interpretations and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. §1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. §1921(b). The "statement of policy" set forth in the Mental Health Procedures Act provides, in pertinent part:

"It is the policy of the Commonwealth of Pennsylvania to seek to assure the availability of adequate treatment to persons who are mentally ill, and it is the purpose of this act to establish procedures

whereby this policy can be effected. The provisions of this act shall be interpreted in conformity with the principles of due process to make voluntary and involuntary treatment available where the need is great and its absence could result in serious harm to the mentally ill person or to others. Treatment on a voluntary basis shall be preferred to involuntary treatment; and in every case, the least restrictions consistent with adequate treatment shall be employed."

Obviously, to enable those charged with the duty to implement this policy without undue fear of civil or criminal liability, section 7114 was enacted. See Erich v. The Reading Hospital and Medical Center, et al., no. 345 C.C.P. Berks Cty. (November, 1980). Neither the language of section 7114 in particular, nor the language and structure of the Mental Health Procedures Act as a whole, even remotely suggest that the classification urged by plaintiff was intended by the General Assembly. Accordingly, this argument is rejected.

Finally, plaintiff suggests that section 7114 applies only to those individuals specifically named therein. Therefore, in the case sub judice defendant hospital cannot claim the benefit of this immunity. Plaintiff finds support for this argument in Saunders v. Latrobe Area Hospital Inc., 14 D. & C. 3d 458 (1980), a decision by Administrator Frankston of the Arbitration Panels for Health Care, and Venesky v,. Community Medical Center, 30 D. & C. 3d 96 (1984).

More recently however, in Erich v. The Reading Hospital and Medical Center, et al., No. 345 (Berks Cty. C.C.P. 1980) affirmed per curiam Superior Court No. 65 Phila. 1985 (filed August 23, 1985) a contrary interpretation of this section was affirmed by the Pennsylvania Superior Court. See also Stew-

art v. United States of America Veterans Administration No. 82-2436, Slip. op. (E.D., Pa. November 18, 1983). In Erich, supra, the court determined that hospitals fall within the class protected by this immunity provision, after considering the purposes underlying the Mental Health Procedures Act and the scope of the act, which includes "hospitals" within its definition of "facilities" covered by the act. See 50 P.S. §7103. Additionally, we would be remiss in considering this issue if we failed to recognize the fact that a hospital's liability must rest on a theory of agency, whereby as principal it becomes liable for the acts of its agents. See generally, Simmons v. St. Clair Memorial Hospital, 332 Pa. Super. 444, 481 A.2d 870 (1984). If plaintiff's interpretation is accepted, the purpose of section 7114 in effectuating the policy of the act will be seriously undermined.

B

Next, plaintiff alleges that the court erred in allowing defendant's expert witness to testify at trial. Defendant's expert witness, Dr. Glass, testified that Charles Werner enucleated his eye in response to a psychotic hallucination, and addressed a central issue at trial; that is, whether following Werner's acts of August 8, 1982, he should have been supervised more closely, secluded, or placed in further restraints.

The record reveals that on September 10, 1985, the court entered an order setting a discovery deadline of November 8, 1985. Plaintiff received Dr. Glass' expert report on November 26, 1985. Plaintiff does not claim that he was previously unaware of defendant's intention to call an expert witness. Rather, plaintiff claims prejudice resulted due to the fact that plaintiff's expert trial testimony was

videotaped on November 22, 1985, before Dr. Glass' report was made available.

Where a party has not acted in bad faith and has not misrepresented the existence of an expert expected to be called at trial, no sanction should be imposed unless the complaining party has been prejudiced from preparing his case for trial as the result of dilatory disclosure. Royster v. McGowen Ford Inc., 294 Pa. Super. 171, 439 A.2d 799 (1982). Where sanctions are appropriate for violation of a pretrial order, the sanction to be imposed is within the trial court's discretion. See Nowoseilski v. Kryzoski, 280 Pa. Super. 343, 421 A.2d 703 (1980). The basic factors considered in order to determine whether the violation of a pretrial order warrants exclusion of a witness's testimony at trial follow:

"(1) The prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court; (4) bad faith of [sic] willfulness of failing to comply with the court's order." Gill v. McGraw Electric Company, 264 Pa. Super. 368, 382, 399 A.2d 1095, 1102 (1979).

Applying these factors to the case sub judice, we determined that under the circumstances present, an exclusionary order was inappropriate. Moreover, post-trial, plaintiff can demonstrate no prejudice which, in hindsight, would render our initial determination erroneous.

On November 22, 1985, plaintiff videotaped the testimony of his own expert witness. On September 5, 1985, at a pretrial conference, defense counsel indicated that she would be calling an expert witness to testify but that his identity had not yet been deter-

mined. Although the videotape session was scheduled as early as September 23, 1985, plaintiff did not move to compel defendant to provide its expert report before the videotaping session. On November 20, 1985, defense counsel telephoned plaintiff's counsel and identified the expert she intended to call at trial, further indicating that she would meet with this expert on November 25, 1985, and would forward his report thereafter. Plaintiff received defendant's expert report on November 26. If plaintiff discovered that late receipt of the report had placed him at a disadvantage, a request for a continuance of trial — to allow plaintiff time to rectify the situation — would have been appropriate. No such request was made. We find no evidence of bad faith, misrepresentation or willful failure to comply with this court's order.

Plaintiff claims that prejudicial surprise resulted when an unexpected response was elicited from defendant's expert by plaintiff's counsel at trial. While at Haverford, plaintiff was continuously prescribed Navane, an anti-psychotic medication. Both plaintiff's expert witness and defendant's main witness Dr. Simenson, the treating psychiatrist, testified that the maximum effective dosage for Navane is 75 milligrams per day. Plaintiff's counsel elicited the following from Dr. Glass:

"Q. Are you familiar with the drug Navane?

"A. Yes, I am.

"Q. Are you familiar with studies that placed its maximum effective dosage at around 70 milligrams per day?

"A. Well, there is a lot of controversy about that. The company that manufactures Navane says not for the maximum dosage is 75 to 80. Okay? There are research institutes that use as much as 130 milligrams a day but that's done under very carefully

controlled conditions. Over 75 to 80 milligrams a day, you are in danger of incurring various serious side effects. Some of which can be irreversible."

This testimony cannot be reasonably viewed as prejudicial to plaintiff. Initially, we note that it does not directly contradict the testimony of Doctors Kirstein or Simenson, but merely suggests that studies have been conducted where greater amounts of Navane were used. Further, if accepted as contradictory, this testimony contradicts the testimony of both plaintiff's and defendant's witnesses. In light of this fact, it is more reasonable that the statement would negatively affect the credibility of Dr. Glass. Plaintiff's assertion that "Dr. Gross (sic) proved to be an argumentative witness and reversed the testimony of both plaintiff's and defendant's witnesses" is of no moment. Absent a showing of prejudice plaintiff is not entitled to a new trial. See generally, Nowosielski v. Kryzosiak, 280 Pa. Super. 343, 421 A.2d 703 (1980); Saks v. Jeanes Hospital, 268 Pa. Super. 578, 408 A.2d 1153 (1979). Compare, Nissley v. Pennsylvania Railroad Company, 435 Pa. 503, 259 A.2d 451 (1969); Royster v. McGowen Ford Inc., supra; McGill v. McGraw Electric Co., 264 Pa. Super. 368, 399 A.2d 1095 (1979).

## C

Prior to trial, plaintiff moved to have certain matters deemed admitted for defendant's failure to provide a timely response to plaintiff's request for admissions and to preclude defendant from offering testimony at trial regarding these matters. Plaintiff mailed request for admissions on or about October 3, 1985. Defendant received the request on October 7, 1985. Plaintiff received defendant's response on

November 20, 1985. Rule 4014(b) of the Pennsylvania Rules of Civil Procedure provides that a matter is admitted unless, within 30 days after service of the request, the party to whom the request is directed serves the requesting party a verified answer or objection. However, part (d) of the rule further provides that the court may permit withdrawal or amendment of an admission "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action on the merits." Pa.R.C.P. 4014(d).

Plaintiff alleges that he was prejudiced by this late response. Specifically, he alleges prejudicial reliance on a requested admission concerning the nature of the implement used by plaintiff in his act of self-mutilation. Plaintiff contended that a plastic fork was used, while defendant suggested that the implement was actually a wooden popsicle stick, a defense witness having so testified in deposition on May 23, 1985.

Under these circumstances the court ruled that plaintiff's requests would not be deemed admitted. Although defendant's response came two weeks beyond the 30-day limit set forth in Rule 4014, plaintiff had notice of these responses on the day before he videotaped his expert witness and well before time of trial. Further, earlier, on May 23, 1985, plaintiff heard deposition testimony which clearly indicated that a factual issue existed regarding the nature of the implement in question. See, id. at 11. While we do not condone untimely responses, under these circumstances, where no prejudice to plaintiff resulted, the court properly denied plaintiff's motion in limine.

## D

Plaintiff alleges error in the court's ruling that evidence of Charles Werner's post-enucleation care and treatment was inadmissible. Generally, in negligence cases evidence of subsequent repairs or remedial measures is not admissible for the purpose of proving antecedent negligence. See, Baran v. Reading Iron Co., 202 Pa. 274, 51 Atl. 979 (1902). However, such evidence is admissible if competent for any purpose, and as long as it is so qualified by instructions to the jury. See Incollingo v. Ewing, 444 Pa. 263, 282 A.2d 206 (1971); Hyndman v. Pennsylvania Railroad Company, 396 Pa. 190, 152 A.2d 251 (1959).

Plaintiff alleges that several times during the course of trial leave was requested to introduce into evidence the fact that following the enucleation, when plaintiff was returned to defendant's care, plaintiff was confined to full leather restraints intended for his protection. Plaintiff contends that this evidence was necessary to meet the defense offered, that is, that the form of restraint imposed prior to the self-inflicted enucleation was reasonable under the circumstances, and consistent with the policy of the Mental Health Procedures Act. See 50 P.S. §7102. Further, plaintiff suggests that defense testimony ruled out full leather restraints as an available alternative in this case. Our review of the record indicates that this is simply not the case.

The testimony of Dr. Simenson, Haverford State Staff psychiatrist, adduced that on August 8, 1986, plaintiff was placed in full leather restraints following the episode wherein he burned his eyelid with a lit cigarette. Plaintiff remained in full leather restraints until approximately 2:00 p.m. on August 9. Id. at 1. Full restraints were described as "leather ankle and wrist cuffs, to place them on both ankles

and both wrists" which are then tied to the bed with the patient lying flat on his back with his limbs to the side. Id. Additionally, there was testimony that earlier, on July 12, 1982, plaintiff had been placed in restraints after he assaulted another patient. Id. at 46. On cross examination, plaintiff's attorney elicited testimony from Dr. Simenson which clearly indicated that full leather retraints are an available alternative:

"Q. And you didn't issue an order that he remain in full leather restraints after August 9, at 2:00 p.m. for a long period of time, did you?

"A. Correct.

"Q. Okay. But you do that in Haverford State Hospital when the need arises?

"A. When the need arises.

"Q. Okay. As a matter of fact, patients can be put in restraints for a considerable period of time, correct?

"A. That's correct.

"Q. So then when you said in your direct examination that the most restrictive in your hospital is a locked unit, that's not really correct, right? Four point leather restraints are used. . .

"A. Would be more restrictive even, than having the freedom of the unit.

"Q. Right. And you also stated the restraints have a limited time frame; but that's the time frame in which their use has to be reviewed, correct?

"A. Right. And then when they expire, they can be renewed and again.

"Q. They can be renewed and again. And you have to do that on occasion, do you not?

"A. Right." Id. at 61-62.

In light of the foregoing it is clear the only relevance that further evidence of the use of leather restraints following plaintiff's self-inflicted injury

could have is to defendant's antecedent negligence. Accordingly, such evidence was properly excluded. Further, assuming arguendo that such evidence was relevant and admissible solely regarding the issue of whether leather restraints were an available alternative, as plaintiff suggests, the foregoing testimony elicited at trial by both counsel for defendant and counsel for plaintiff adequately placed the facts relevant to this issue before the jury. Under these circumstances the exclusion of evidence does not warrant a new trial. Cf. Eldridge v. Melcher, 226 Pa. Super. 381, 313 A.2d 750 (1973); Billings v. Upper Merion Twp. Authority, 44 Pa. Commw. 622, 405 A.2d 967 (1979).

Plaintiff's final allegation of error concerns the court's ruling regarding the admissibility of the following hypothetical, which was posed by defendant's counsel on re-cross-examination of plaintiff's expert witness Dr. Kirstein:

"Q. Isn't it true, doctor — assume that one on one was not ordered in the physician's orders or noted in the progress notes, but that one on one supervision was in effect being practiced by the staff of Haverford State Hospital — then isn't it true that the failure to keep adequate notes as to the ordering of one on one is not a substantial factor in the enucleation that resulted?

"Mr. Stagliano:

"Objection. It's asking the doctor to assume facts not in evidence. You may answer." N.T. Deposition of Larry Kirstein, pp. 78-79.

The testimony continues:

"A. The question is, as I understand it is, if in point of fact he was being specialed, it just hadn't been adopted what would be the impact of that on my opinion?

"Q. (By Ms. Lamb) Yes.

"A. I think that my review of this case, in formulating the opinion I had, was based on what I was given and that these records, there is no suggestion there is an awareness of the suicide potential, awareness of the onset of a depressive potential, awareness of, on the part of Dr. Simenson, of increasing agitation and upsetness over the last month or so by this particular patient, and no particular attention being given to the handling of a suicide gesture, the burning of the eyelid. In point of fact, he was aware he should have documented it.

"Q. My question for you then Doctor, is, assuming that Dr. Simenson was aware of the changes that were being documented by the nursing staff and the aides at Haverford Hospital, but yet not, he did not document his own observations, but yet was aware of the change, but made no documentations, could you, isn't it true then that Dr. Simenson's failure to enter notes in that time frame was not a substantial factor in his enucleation?

"Mr. Stagliano: Same objection. You may answer.

"A. It is a different level of problem if the doctor was aware and takes action. It is still irresponsible medical practice not to document for yourself and for your team or for your lawyers, and for families what you are doing and why. I don't see that here.

"Q. But isn't it true, Doctor, adequate treatment could be rendered without documentation?

"A. About 85 percent, yes, and 15 percent, no. Because the 15 percent no would be adequate treatment involves adequate documentation.

"Ms. Lamb: If you will wait a second, I just want to review my notes. I have no further questions."

The question of admissibility of expert testimony is within the discretion of the trial judge. See, Lebesco v. Southeastern Pa. Transp. Auth., 251 Pa. Super. 415, 380 A.2d 848 (1977). Generally, an ex-

pert opinion may be given in response to a hypothetical question where the hypothesized facts are shown by facts in evidence or such facts a jury could be justified in finding from the evidence. See, Battistone v. Benedetti, 385 Pa. 163, 122 A.2d 563 (1956); Capan v. Divine Providence Hospital, 270 Pa. Super. 127, 410 A.2d 1282 (1979). However, reversible error will not be found when the difference in the actual facts and the assumed facts is not "so great" as to render the question improper. See, Septa v. W.C.A.B. (Saxon), 82 Pa. Commw. 590, 477 A.2d 9 (1984); Astro Remodeling v. W.C.A.B. (Julye), 80 Pa. Commw. 552, 471 A.2d 1320 (1984); U.S. Steel v. Workmen's Comp. Appeal Bd., 55 Pa. Commw. 250, 422 A.2d 1243 (1980). An expert may base his answer on assumed facts which later become part of the record. Lebesco v. Southeastern Pa. Transp. Auth., supra; Keilbach v. Metropolitan Life Ins. Co., 157 Pa. Super. 590, 43 A.2d 652 (1945). On cross-examination it is proper to add such additional facts to a hypothetical question as are justified by the evidence for the purpose of ascertaining whether the additional facts alter the expert's opinion. See, McForley v. School Dist., 291 Pa. 252, 139 Atl. 848 (1927).

At trial the jury heard the testimony of Frank Force, a psychiatric aid at Haverford State. Force was on duty on August 9, 1982, and was told when he commenced duty that day "to keep an eye on" Charles Werner. Force testified that he was following about 25 steps behind Werner when Werner entered the room where the injury was inflicted. Werner was out of Force's view for only five seconds when Force found him attempting to remove the eye. See, Deposition of Francis Edward Force, p. 44.

During plaintiff's case, Dr. Kirstein repeatedly

testified that under the circumstances 'Dr. Simenson's documentation indicated "deviant care" and was "sloppy" practice. Dr. Simenson testified regarding his own observations of Charles Werner during the relevant period, his documentation and lack thereof regarding these observations, and was extensively cross-examined regarding these facts.

Anticipating the foregoing, defense counsel here posed hypothetical questions altering the factual assumptions previously made by plaintiff's counsel in an effort to test the credibility of plaintiff's expert. This is proper cross-examination, see generally McSorley v. School Dist., supra, as the record reveals that any deviation between the assumed facts and the facts later established by the evidence was not "so great" as to constitute reversible error.

For the foregoing reasons plaintiff's motion for a new trial was properly denied.